## CHARLESTON·

| 31 | 585 |
| 38 | 31 |

### TENNANT *v.* HEADLEE.

Submitted June 26, 1888.—Decided November 24, 1888.

EXECUTORS AND ADMINISTRATORS—TRUSTS AND TRUSTEES.

J. M. H., on the 8th of September, 1884, conveyed in trust to his father, S. H., certain real and personal property to secure certain debts therein named with the usual power to sell and pay the same. Out of his own moneys and the proceeds of his trust-sales S. H. within less than five months after the date of the deed of trust, had paid all the expenses attending the execution of the trust and all the trust-debts excepting those of certain Wheeling and Baltimore creditors amounting to $2,134.03. Of these he had paid $1,600.52 leaving $553.51 unpaid, which they assigned to said S. H. in trust for the sole and exclusive use of the widow and infant children of said J. M. Headlee, then dead. In a suit brought by the administrator of J. M. H., deceased, against S. H. to compel him as a trustee to account for and pay to him the residue of said trust-funds remaining unexpended it clearly appeared, that of the trust-funds there remained in his hands a balance of $443.99, which was insufficient to pay said widow and infant children of J. M. H. the said sum of $553.51 of said trust-debts assigned as aforesaid for their exclusive use and benefit. *Held:*

74

The said sum of $443.99 remaining in the hands of S. H., trustee, constituted no part of the estate of J. M. H.; and the suit of his administrator to recover the same from said trustee could not be maintained.

Statement of the case by Woods, Judge :

James M. Headley by deed dated September 8, 1884, conveyed to his father, Stephen H. Headlee, his store and dwelling-house and lot in Monongalia county and assigned, transferred and delivered to him his whole stock of goods, wares and merchandise and other articles in said storehouse including all his book-accounts, notes, claims or demands, all his household and kitchen furniture and one buggy, horse and harness to secure the payments of certain amounts due from him to certain creditors, whose names as well as the debts due to them respectively are particularly set forth in said deed and amounted in the aggregate to the sum of $2,558.43 exclusive of interest.

By the terms of said deed full power was given to said Stephen H. Headlee to sell or dispose of any or all of said personal estate and property at public or private sale at wholesale or retail for cash or upon reasonable credit, as may most conduce to, and promote the interest of, said creditors and grantors ; and after exhausting all the personal property, other than said household and kitchen furniture, to sell the real estate for one fourth cash and the residue upon a credit of one, two and three years with interest.

The trustee at once took possession of all said personal property, except the household and kitchen furniture, and with the assistance of his son, J. F. Headlee, acting as his clerk, and of the grantor, invoiced the same ; but this invoice was not signed until the 25th of October, 1884, though he proceeded to sell, and by the 20th of May, 1885, had sold, all of said personal property in his possession, and had collected, as far as collectible, all the notes, accounts, and claims mentioned in the deed of trust, and, as it appears, had paid all charges attending the execution of the trust, and all the debts secured by the deed of trust, excepting only one fourth of the amounts due to the Wheeling and Baltimore creditors, which they had severally assigned for the benefit of the widow and infant children of the grantor.

On or about the last of October, 1884, James M. Headlee died intestate, and on the 2d of June, 1885, the plaintiff was appointed and qualified as his administrator, who, on the 5th of October following, instituted his suit in the Circuit Court of Monongalia county against said Stephen H. Headlee, wherein, at the December rules, 1885, he filed his bill, setting out the execution of said trust-deed, the several debts secured thereby, making the deed a part of his bill, and averring that the personal property and choses in action thereby assigned are more than sufficient to satisfy all the trust-debts; that the trustee had sold part of the property, and converted the residue to his own use, and refused to account for the same to him as the administrator of his intestate; and praying for a discovery of the amounts of the trust-property which went into his hands, and how the same had been disbursed and what debts he had paid, and that he be compelled to account for and pay over to the plaintiff, as such administrator, any balance which may be in his hands on such accounting, and for general relief.

The bill was regularly taken for confessed, and set for hearing, and at the February term of said court the defendant filed his answer, to which the plaintiff replied generally, and also filed a special reply, which ought to have been rejected, as there was nothing in the answer which required the same; but, as it did no harm, it is unnecessary to further notice it.

The answer admits the execution of the trust-deed to secure said trust-debts, and that he had taken possession of the personal property mentioned therein, except the household and kitchen furniture; that he sold the store goods for a full, fair price, and collected such of the accounts as were collectible, and that as such trustee he executed in good faith all the duties devolving upon him, and that, before the expiration of a year after the date of the deed of trust, he fully paid off his son's indebtedness to the Wheeling and Baltimore creditors in said trust name, by a compromise of their respective claims at seventy five cents on the dollar, and only charged his son's estate with the sum so paid, and the other creditors named therein were paid in full by him; and that he also paid other debts of his son (J. M. Headlee) outside

of the trust-deed, which he was not bound to under his
contract with said son, which will be hereafter referred to.
He avers that the debts secured by said deed of trust, at
their full face value, were more than sufficient to consume
the whole personal estate of his said son ; and that he advan-
ced and paid out large amounts of his own private funds in sat-
isfaction of these debts, before he could realize the same out of
the trust property; and claims that his son's estate is still in
debt to him for these advances but may be diminished by
subsequent collections.   The answer then avers that on the
2d of October, 1884, said James M. Headlee entered into the
following article of agreement, a copy of which was filed with
the answer :

"OCTOBER THE 2, A. D. 1884. Artikel of agreement maid
and entered into between J. M. Headlee of the first part
and S. H. Headlee of the second part; Whereas I, the
party of the first part, have maid assinement to the sec-
ond part for to secure certain claims menshoned in the as-
sinement, I, the party of the fisrt part do agree that if
the party of the second part will pay off the claims men-
shoned in the assinement that I maid to him either by sell-
ing the goods on hands or by adding more goods to the old
stock of goods or by buying the claims in at a discount, that
he, the party of the second shall have all my personal prop-
erty, and also the use of the store-room and warehouse free
of rent for one year, and also one year to settle up the busi-
ness in.

"Witness our hand and seal.

                    "J. M. HEADLEE     [Seal.]
                    "S. H. HEADLEE     [Seal."]

Under the terms of this contract article the defendant
claims whatever amount may remain of the proceeds of the
personal property specified in said deed of trust, after the
trust-debts thereby secured are paid, which he avers does
not exceed $200, and avers that it is in the possession of the
widow of James M. Headlee.   He disclaims all interest in
or control over the real estate mentioned in said deed of
trust; but denies that either the plaintiff or the estate of the
intestate has any right whatever to the said trust-money re-
maining in his hands or any right to maintain any suit to re-

cover the same; and prays to be hence dismissed, with costs.

At the February term, 1886, the cause was referred to a commissioner, who was ordered to ascertain what property and money came to the hands of the defendant, Stephen H. Headlee, as trustee under the deed of trust in the bill mentioned, dated September 8, 1884, and what disbursement, if any, he has made of the trust fund. "When so done he shall settle the accounts of the said trustee, and ascertain how much, if anything, is due from said defendant to the estate of said James M. Headlee or his administrator, for money arising from the property, *etc.*, received by him by virtue of said trust deed, and report any other pertinent matter."

The commissioner, having completed his report on the 25th September, retained the same in his office until the 11th October, 1886, on which last named day he filed the same in the clerk's office of said Circuit Court with three exceptions of the defendant's counsel indorsed thereon together with all the depositions and exhibits, which were before him in making his report. While the commissioner does not say that he returned these proofs as part of the report because of the exceptions, yet inasmuch as the exceptions were taken during the ten days the report was retained in his office after the same was completed, as the statute in such cases makes it the duty of the commissioner to return "with his report the exceptions and the evidence relating thereto," (Code, ch. 129, § 7,) and as the defendant's third exception could not have been determined without all the evidence, which was before the commissioner, we must in the absence of all evidence to the contrary presume, that the depositions taken by the commissioner and all exhibits filed, which were considered by him, were returned with his report because of said exceptions.

For reasons which will be apparent, we deem it unnecessary to set out these exceptions, or to consider them for any other purpose than to permit us to look beyond the face of the commissioner's report, and consider the evidence in the cause on which he acted. It appears from the face of the commissioner's report, and as reformed and confirmed by the final decree in the cause, that the defendant, as such

trustee, was charged with the sum of $2,725.47, as received by him from the sale of the personal property mentioned in the deed of trust, and was credited as follows:

| | | |
|---|---:|---:|
| Am'ts paid for insurance and taxes on trust property, for interest on moneys advanced, for clerk's fee, repairs, and traveling expenses, | $ 86 | 33 |
| For att's fees, $75, clerk hire, $218 | 293 | 00 |
| For trustee's commission on $2,725.47 | 63 | 50 |
| For am'ts paid trust creditors, John Howard and 2d Nat. Bank | 238 | 13 |
| For am'ts paid to Wheeling trust creditors on their several debts, as per their receipts 1 & 2, | 769 | 72 |
| For am't paid Baltimore trust creditors on their several debts, as per their receipt No. 3 | 830 | 80 |
| | $2,281 | 48 |

—Leaving a balance in the hands of the defendant, as trustee, of $443.99. On the final hearing of the cause, the Circuit Court, after reforming the commissioner's report, as before stated, confirmed the same; and adjudged, ordered, and decreed that the said plaintiff, administrator of James M. Headlee, deceased, recover against the defendant, Stephen H. Headlee, the said sum of $443.99, with interest from the 25th day of September, 1886, together with his costs, to be taxed by the clerk according to law.

From this decree, and from the decree referring the cause to a commissioner, the defendant has been allowed an appeal and *supersedeas.*

*P. H. Keck* for appellant.

*A. F. Haymond* and *Joseph Moreland* for appellee.

WOODS, JUDGE:

The appellant, by his counsel, has assigned 22 grounds of error in the decrees complained of; but, from the view we have taken, it is only necessary to consider the sixth cause assigned, for, if that is sustained, it must be conclusive of this controversy. The sixth cause of error assigned, which in effect includes all the others, is in these words: "The court erred in said final decree because said report and decree were not warranted by the evidence in the cause."

As already shown, we must bear in mind that, from the

defendant's exceptions to the commissioner's report, all the depositions taken by him, and all the exhibits which were presented to and filed by him with said depositions, as well as the pleadings in the cause, and exhibits filed therewith, which were before him as evidence in making his report, are now before us, as they also were before the Circuit Court upon the hearing of the cause; and from this evidence and these proofs we are to determine whether the final decree is warranted by the evidence in the cause, and if not, whether any decree can be rendered in favor of the plaintiff upon the demand set out in his bill.

Many witnesses have been examined on both sides touching the items of debit and credit entered against and in favor of the defendant as set forth in the commissioner's report; but touching the genuineness and validity of the article of agreement alleged by the defendant to have been executed by himself and said James M. Headlee, dated October 2, 1884; and touching the mental capacity of James M. Headlee to enter into such a contract. The depositions of these witnesses cover more than 325 pages of the printed manuscript in this cause, and in regard to these questions much of it is exceedingly unsatisfactory and conflicting; and remembering the well-established rule in such cases, where the findings of the commissioner have been approved by the trial court, this Court will sustain the decree unless the findings of the commissioner are clearly wrong. *Boyd* v. *Gunnison*, 14 W. Va. 1; *Graham* v. *Graham*, 21 W. Va. 698; *Handy* v. *Scott*, 26 W. Va. 710.

The report of the commissioner, as well as the final decree ignore the pretensions of the defendant that he was entitled to retain as his own the unexpended residue of the trust-fund after the payment of the trust-debts, and the necessary charges incurred in the execution of the trust; and without expressing any opinion in regard to his conclusions, or the grounds upon which they rest, yet we are not at liberty in such a case as this to set his findings aside, even though upon full examination of the evidence we come to a different conclusion.

In *Doonan* v. *Glynn*, 28 W. Va. 715, this Court decided " that where the decree sought to be reversed is based upon

depositions, which are so conflicting and of such a doubtful and unsatisfactory character that different minds and different judges might reasonably disagree as to the facts proven by them, the appellate court will decline to reverse the decree, though the testimony may be such that it might have pronounced a different decree if it had acted upon the case in the first instance." See, also, *Pritchard* v. *Evans*, *supra*, p. 137—(5 S. E. Rep. 461); *Smith* v. *Yoke*, 27 W. Va. 639.

It appears from the commissioner's report, that after the defendant had been allowed credit for all disbursements on account of the preservation and management of the trust property, there remained in his hands, of the $2,725.47 with which he was charged, the sum of $2,282.64, applicable to the payment of the debts secured by the trust-deed. Of this balance the commissioner reports, that the defendant paid to the Second National Bank its debt of $100.00, and to John Howard $138.13, in discharge of his debt of $125.00, both of which debts are secured by said trust-deed; leaving $2,044.51 to be applied ratably to the satisfaction of the debts secured to the Wheeling and Baltimore creditors.

The trust-deed secured to Kraft Bros. & Rosenburg, $240.24; to Robert Simpson, $201.16; to Greer & Laing, $166.18; to Speyer Bros., $162.55; to Harper & Bro., $76.28; to Laughlin Bros. & Co., $51.53; to M. Gutman & Co., $89.00; to G. W. Johnson, $21.60; and to Wheat & Naylor, $17.75, —amounting, in the aggregate, to the sum of $1,026.29. These are denominated and referred to in the commissioner's report as the " Wheeling creditors." It also secures to Daniel Miller & Co., $310.98; to Chas. Duval & Co , $90.30 ; to Carroll, Adams & Co., $77.05; to H. & E. Hartman & Co., $510.55; and to Johnson, Sutton & Co., $118.86,—amounting, in the aggregate, to $1,107.74. These are denominated and referred to in the commissioner's report as the " Baltimore creditors." The unexpended balance of the trust-fund in the hands of the defendant, when applied to the satisfaction of the amounts secured to the Wheeling and Baltimore creditors, $89.51, is chargeable upon the real estate mentioned in said trust-deed.

. The report of the commissioner shows that the defendant,

as such trustee, on the 5th of December, 1884, paid to said Wheeling creditors, on their several debts, the sum of $256.57; and on the 30th of December, 1884, he paid said Baltimore creditors, on their several debts, the sum of $830.80; and on the 16th of January, 1885, he paid said Wheeling creditors, on their several debts, the further sum of $513.15; and refers to the vouchers for these payments furnished by the defendant, designated by him as "Receipt 2, 3, and 1." No other payments were made to the Wheeling or Baltimore creditors upon their several trust-debts. These sums so paid amounted to $1,600.53, which was precisely seventy five per cent. upon the aggregate amount of their several trust-debts. The remaining twenty five per cent. of their debts, viz., $533.57, still remains unpaid, and the same is a trust-lien on the unexpended balance of $443.99, remaining in the hands of the defendant as such trustee, and upon the real estate conveyed by said deed of trust still remaining unsold.

It therefore becomes a matter of the first importance in this controversy to determine what right, if any, the plaintiff has to demand that this sum of $443.99 shall be paid to him as part of the estate of his intestate, James M. Headlee. If it should appear that these Wheeling and Baltimore debts have not been in fact paid in full, or have been assigned to third parties, though for the consideration of seventy five *per cent.* of their face value, such assignment would pass to the assignee the right to receive payment thereof from the defendant as trustee, and he, and not the administrator of the estate of James M. Headlee, would alone be entitled to demand and receive the same.

It will not be controverted that if the trustee had procured the consent of the creditors to abate any portion of their several demands, and had they accepted in satisfaction of their demands less than the full value thereof, such abatement would have inured to the benefit of the debtor's estate; but in every case, whether the abatement inures to the benefit of the debtor's estate, or to the benefit of any person other than the trustee, he can only receive credit for the moneys actually paid out by him in the purchase or satisfaction of the trust-debt.

The defendant, in his answer avers, that "as such trustee he executed in good faith all the duties devolving upon him, and, before the year after said trust was given, he fully paid off his said son's indebtedness, as to the Wheeling and Baltimore creditors, in said trust named, by compromise of their respective claims at seventy five cents on the dollar, and only charged his son's estate with the sum so paid, and the other creditors therein named were paid in full."

All the testimony in this voluminous record was taken by the commissioner upon the execution of the order of reference. The first and the principal witness introduced and examined by the plaintiff was George C. Sturgiss, who proved that he had been a practicing lawyer since 1863; that he prepared the said deed of trust; that he was then and afterwards the counsel of all the Baltimore and most of the Wheeling creditors; that he was counsel for the defendant trustee, representing the interest of the creditors and the wife, subsequently the widow and children, of James M. Headlee, who died a month or two after the execution of the deed of trust; that some propositions were submitted to the Baltimore and Wheeling creditors by the trustee looking to the early payment of their claims, in consideration of the abatement of their amounts.

"These negotiations were carried on through me, acting as counsel for the creditors, and for the trustee, and resulted in an arrangement that was deemed by myself and the creditors mutually and highly beneficial to the creditors, and the widow and heirs of James M. Headlee, who in the mean time had departed this life. Stephen M. Headlee paid off these Wheeling and Baltimore creditors with seventy five cents on the dollar of their claims about the last of December or early in January following, and they delivered to him, through our firm, (Berkshire & Sturgiss,) receipts in full for their claims, in consideration of the payment aforesaid, with an assignment or transfer of the same, so far as the remaining twenty five per cent, was concerned, for the benefit of the widow and heirs of James M. Headlee. I think the receipts which I delivered to Stephen H. Headlee contained a full statement of the amount of the claims, and the amount paid by him on them, and they were drawn with his assent and

approval, so as to give the benefit of the discount or abatement to the widow and heirs in case any of the other Wheeling and Baltimore creditors should refuse to enter into a like agreement in case the estate should fail to pay out in full."

The defendant was also examined as a witness on his own behalf, who, upon cross-examination by the plaintiff's counsel, in answer to the question : "State whether or not, when you paid the creditors named and secured in the deed of trust, you took and received vouchers and receipts for said amounts so paid by you," answered : "I did ; or Sturgiss and I did together." In answer to the question on cross examination : "Who has said vouchers and receipts at this time ?" he stated : "I have them in my possession." And being further asked on cross-examination "What objection, if any, have you to filing them with your deposition ?" answered : "I have no objection and want them filed ;" and he thereupon filed with the commissioner three receipts, marked, respectively, "Receipt No. 1," "Receipt No. 2," and "Receipt No. 3." These several receipts are in the words and figures following :

### PAPER MARKED "RECEIPT No. 1."

"The undersigned creditors of James M. Headlee, deceased, late of Blacksville, W. Va., to whom said Headlee was indebted as follows, viz. :

| | |
|---|---:|
| Kraft Bros. and Rosenburg | $240 24 |
| Robert Simpson | 201 16 |
| Greer & Laing | 166 18 |
| Speyer Bros. | 162 55 |
| Harper Bros. | 76 28 |
| Laughlin Bros. & Co. | 51 53 |
| M. Gutman & Co. | 89 00 |
| G. W. Johnson | 21 60 |
| Wheat & Naylor | 17 75 |
| "Aggregating the sum of | $1,026 29 |

—"And on which twenty five *per cent.* has heretofore and since the death of said James M. Headlee been paid out of his estate by Stephen H. Headlee, trustee in a deed of trust executed by him in his lifetime upon all his estate to secure the debts due to all of his creditors, hereby agree to accept the

sum of fifty *per cent.* of each of our debts as orignally due in
full satisfaction of our respective debts upon the following
basis in consideration of the payment of following sums to
us respectively, viz:

| | | |
|---|---:|---:|
| Kraft & Rosenburg | $120 | 12 |
| Robert Simpson | 100 | 58 |
| Greer & Laing | 83 | 09 |
| Speyer Bros | 81 | 27½ |
| Harper & Bros | 38 | 14 |
| Laughlin Bros. & Co | 25 | 76½ |
| M. Gutman & Co | 44 | 50 |
| G. W. Johnson | 10 | 80 |
| Wheat & Naylor | 8 | 87½ |
| "Aggregating the sum of | $513 | 15 |

"—Receipt whereof is hereby acknowledged from Stephen H.
Headlee. We assign, transfer and sell to said Headlee our
respective claims and debts above described in trust for the
sole and exclusive use and benefit of the widow and infant
heirs of said James M. Headlee, deceased, after the said
Stephen H. Headlee shall have been reimbursed his money
actually expended by him in paying to us the above-named
several sums; the true intent and meaning of this assign-
ment being to give to the said widow and infant children the
benefit of the compromise of above-recited claims. Witness
the following signatures this 14th day of January, 1885.

"WHEAT & NAYLOR.
"KRAFT BROS. & ROSENBURG.
"M. GUTMAN & CO.
"LAUGHLIN BROS. & CO.
"GEO. W. JOHNSON'S SONS.
"GREER & LAING.
"SPEYER BROS.
"ROBERT SIMPSON.
"HARPER BROS."

PAPER MARKED "RECEIPT No. 2."

"WHEELING, W. VA., Dec. 5th, 1884.

"List of creditors, in the city of Wheeling, of J. M. Headlee, deceased:

| | |
|---|---:|
| Kraft Bros. & Rosenburg | $240 24 |
| Robert Simpson | 201 16 |
| Greer & Laing | 166 18 |
| Speyer Bros. | 162 55 |
| Harper Bros. | 76 28 |
| Laughlin Bros. | 51 33 |
| M. Gutman & Co. | 89 00 |
| G. W. Johnson | 21 60 |
| Wheat & Naylor | 17 75 |
| | "$1,026 29 |

"We, the undersigned, hereby acknowledge the receipt of twenty five *per cent.* of our respective claims as enumerated above; being first dividend on the same. In witness whereof we hereby affix our names, with the amount of the dividend. Said amounts are paid by Mr. S. H. Headlee, assignee.

| | |
|---|---:|
| "KRAFT AND ROSENBURG, sixty and .06-100 | $60 06 |
| "ROBERT SIMPSON, fifty and 29-100 | 50 29 |
| "HARPER BROS., nineteen and 07-100 | 19 07 |
| "SPEYER BROS., forty 64-100 | 40 64 |
| "GREER & LAING, forty one and 54-100 | 41 54 |
| "M. GUTMAN & CO., twenty two 25-100 | 22 25 |
| "LAUGHLIN BROS. & CO., twelve 88-100 | 12 88 |
| "WHEAT & NAYLOR, four 44-100 | 4 44 |
| "GEO. W. JOHNSON'S SONS, five 40-100 | 5 40 |
| | "$256 57" |

PAPER MARKED "RECEIPT No. 3."

"The following creditors of James M. Headlee, deceased, late of Blackville, Monongalia county, West Virginia, to whom said Headlee's estate is indebted, as follows:

| | |
|---|---:|
| To Daniel Miller & Co. | $310 98 |
| Chas. Duval & Co. | 90 30 |
| Carroll, Adams & Co. | 77 05 |
| H. & E. Hartman & Co. | 510 55 |
| Johnson, Sutton & Co. | 118 86 |
| "All of Baltimore, Md.,—aggregating | $1,107 74 |

" In consideration of the sum of eight hundred and thirty dollars, being at the rate of seventy-five *per cent.* of each of said claims paid to us on said claims, *pro rata*, by Stephen H. Headlee, do hereby sell, assign, transfer to said Stephen H. Headlee, in trust for the use and benefit of the widow and infant heirs of said James M. Headlee, the several claims above named, with the accounts and other evidences of said indebtedness, but without recourse either in law or equity upon us, or either or any of us, in any way or manner whatever. The true intent of this assignment is that said Stephen H. Headlee shall take and hold said claims in trust as aforesaid, after reimbursing himself for the amount actually advanced and paid by him to us out of his own separate estate and moneys, and that the abatement made to us in the amount due us, respectively, shall not inure or go to the benefit of said Stephen H. Headlee, or any of the creditors of said James M. Headlee, deceased, either directly or indirectly. Given under our hands this 30th day of December, 1884.

> " Daniel Miller & Co.
> " Johnson, Sutton & Co.
> " Carroll, Adams & Co.
> " H. & E. Hartman & Co.
> " Charles Duval & Co."

Thus it clearly appears on the face of the report of the commissioner and from the three receipts hereinbefore set forth and referred to by him as the vouchers, upon which he allowed the trustee credits for the amounts specified therein, as well as from the testimony of George C. Sturgiss, introduced and examined on behalf of the plaintiff, and from the testimony of the defendant elicited upon his cross-examination, that twenty five *per cent.* of the debts due to said Wheeling and Baltimore creditors, amounting to the said sum of $533.51, has never in fact been paid, discharged or released for the benefit of the estate of James M. Headlee or any of the creditors thereof.

These Wheeling and Baltimore creditors, by the very terms of their assignments of twenty five *per cent.* of their respective claims to the said Stephen H. Headlee in trust for the use and benefit of the widow and infant heirs of the said James M. Headlee, deceased, declared that " the true intent of the

assignment is, that Stephen H. Headlee shall take and hold said claims in trust as aforesaid after reimbursing himself for the amount actually advanced and paid by him out of his own separate estate and moneys, and the abatements made by us shall not inure or go to the benefit of the said Stephen H. Headlee or any of the creditors of the said James M. Headlee, deceased, either directly or indirectly."

These assignments were prepared and executed, (and the moneys specified therein paid by Stephen H. Headlee,) within less than three months from the death of James M. Headlee by the witness George C. Sturgiss, a lawyer having had twenty one years' experience in his profession, acting at the time as the counsel of said creditors and said trustee; and, as he testifies, they were prepared " with the approval and assent of Stephen H. Headlee, so as to give the benefit of the discount to the widow and heirs of James M. Headlee." By this act of these creditors no others were injured. All their debts were amply secured by the trust-deeds. They had the right to claim and collect the whole. They had the right to assign the same in whole or in part for the benefit of the widow and infant children of their deceased debtor, and in assigning to Stephen H. Headlee twenty five *per cent.* of claims to hold in trust for the exclusive benefit of said widow and infant children they in equity transferred the security afforded to them by the deed of trust for that much of their several debts, and the estate of James M. Headlee could have no interest therein, and as a consequence thereof the trustee was precluded from applying any portion of said twenty five *per cent.* of said debts to the satisfaction of any debt due to him from James M. Headlee at the time of his death, or to reimburse him for any moneys subsequently expended by him in the payment of debts due by him to other persons, not included in said deed of trust.

It follows as a natural result from these facts, that the sum of $443.99 ascertained by the report of the commissioner, as reformed and modified by the final decree, belongs wholly to the said widow and infant children; and that, unless otherwise paid to them, they alone are entitled to receive the $443.99 ascertained by the final decree to remain in the hands of the defendant, out of the trust-fund arising from

the sale of the personal property mentioned in the deed of trust, and that no part of said $443.99 belongs to the plaintiff as the administrator of James M. Headlee.

The plaintiff not having excepted to the commissioner's report must be considered as having admitted that no greater amount of the trust-fund than $443.99 remains in the hands of the defendant as trustee; and, that sum being less than the unpaid residue of said trust-debts which was assigned for the use and benefit of said widow and infant children, secured to them by the deed of trust, it follows that the Circuit Court erred in decreeing, that the same should be paid to the plaintiff.

There is nothing in this record to justify the imputation that the defendant was chargeable with want of diligence or good faith in the execution of the deed of trust, and in the payment of the several debts secured thereby; and it is not even pretended, that he was chargeable with any greater sum than the $2,725.47 of the trust-fund with which he is charged in the commissioner's report. On the contrary it is apparent upon all the facts in this record, that the defendant in the discharge of the duties of such trustee proceeded with usual diligence, and must have advanced more than $1,000.00 of his private funds in payment of the charges upon said trust-funds. This defendant was guilty of no negligence in the discharge of his duties, and the pretension of the plaintiff that he has been hindered and delayed in the administration of the estate of his intestate by any want of diligence on the part of the defendant, has been shown to be unfounded.

Having reached the conclusion, that the plaintiff has failed to show himself entitled to any of the relief prayed for, we deem it unnecessary to determine any other of the numerous grounds of error assigned by the appellant, and in regard to these we express no opinion. For the reason before stated, we are of opinion, that the decree of the Circuit Court entered in this cause on the 21st day of October, 1886, is erroneous and must be reversed with costs, and the plaintiff's bill dismissed. And this Court now proceeding to render such decree, as the Circuit Court should have rendered, it is adjudged, ordered and decreed, that the plaintiff's bill

be dismissed, and that the plaintiff out of the assets of his intestate in his hands to be administered do pay to the defendant his costs.

REVERSED.