(133 App. Div. 570.)

## COHEN v. KOSTER.

(Supreme Court, Appellate Division, First Department.   July 13, 1909.)

1. LIVERY STABLE KEEPERS (§ 5*)—LIABILITIES—MERCHANDISE ON TRUCK.

Plaintiff delivered a case of merchandise to a public truckman for transportation, and the latter kept it on his truck, which he drove into the defendant's livery stable and left there. Defendant's employés in the regular course of their duty unhitched the horses and backed the truck into its usual place, among others which defendant had on storage or livery. It had been the practice, for a number of months, of some of the truckman's drivers, unknown to him, to send their assistants and sometimes strangers with trucks to defendant's stable at night, the trucks having at times merchandise on them, and at times strange boys were sent for the trucks in the morning, and on the next morning, about the time that the truck was usually called for, a stranger came to the stable and asked for the truck, describing the horse which was hitched thereto, and he was allowed to drive off with plaintiff's case of goods on it, and no trace of the case was ever discovered. Subsequently plaintiff's assignor demanded the case of defendant, and the demand was refused. *Held*, that there was no conversion of the property by defendant, who was under no obligation to hold it for plaintiff's assignor.

[Ed. Note.—For other cases, see Livery Stable Keepers, Cent. Dig. § 5; Dec. Dig. § 5.*]

2. LIVERY STABLE KEEPERS (§ 5*)—LIABILITIES—DELIVERING PROPERTY TO WRONG PERSON—NEGLIGENCE.

Neither could defendant be held liable to plaintiff's assignor for negligence in delivering the truck to the wrong person, as he owed no duty to plaintiff's assignor to protect his property.

[Ed. Note.—For other cases, see Livery Stable Keepers, Cent. Dig. § 5; Dec. Dig. § 5.*]

3. NEGLIGENCE (§ 2*)—NATURE AND ELEMENTS.

"Negligence" must depend on a duty owed by one person to another which is negligently performed.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 3, 4; Dec. Dig. § 2.*

For other definitions, see Words and Phrases, vol. 5, pp. 4743–4763; vol. 8, pp. 7729–7731.]

4. TROVER AND CONVERSION (§ 4*)—ELEMENTS OF CONVERSION.

To hold one liable for conversion, it must appear that he assumed and exercised dominion or control over the property, and, having possession, refused to deliver it to the owner.

[Ed. Note.—For other cases, see Trover and Conversion, Cent. Dig. § 25; Dec. Dig. § 4.*]

Clarke and McLaughlin, JJ., dissenting.

Submission of controversy, under Code Civ. Proc. § 1279, between Joseph Cohen, plaintiff, and William Koster, Jr., defendant. Judgment for defendant.

Argued before INGRAHAM, McLAUGHLIN, LAUGHLIN, CLARKE, and HOUGHTON, JJ.

Moses R. Ryttenberg, for plaintiff.
Alfred D. Lind, for defendant.

INGRAHAM, J. It appears in this action: That the plaintiff was the owner of certain merchandise; which he delivered to one McDon-

ald, a public truckman, late in the afternoon of September 3, 1907, for transportation. That McDonald did not deliver the merchandise that afternoon, but kept it on his truck, drove the truck into the defendant's stable, and left it there. That the defendant's employés, in the regular course of their duties, unhitched the horses attached to the truck and backed the truck into its usual place among many other trucks which defendant had on storage or livery. That it had been the practice of some of McDonald's drivers, unknown, however, to McDonald, to send their assistants, and sometimes strangers, with trucks to the defendant's stable at night; the trucks having at times merchandise upon them. That at times strange boys were sent for trucks in the morning. That this practice had continued a number of months. On the morning of September 4, 1907, about the time that McDonald's truck was usually called for, a young man, a stranger to the defendant, came to the defendant's stable, the defendant and his employés then being engaged in hitching and sending out several hundred trucks, and asked for McDonald's truck. That the stranger described the horse that he wanted. The horse described, which belonged to McDonald, was hitched to the truck, and the stranger drove it off with the plaintiff's case of goods on it. The horse and truck were subsequently found abandoned on the street, but no trace of the case was ever discovered. Subsequently the plaintiff's assignor demanded from the defendant the case that McDonald had left on the defendant's premises the night before, which demand was refused, and the question submitted is whether the defendant was liable to the plaintiff for the value of this case of merchandise.

Undoubtedly McDonald was a bailee and liable to the plaintiff's assignor for failure to deliver the merchandise intrusted to him for transportation; but there was no relation between the plaintiff and the defendant. The defendant received no merchandise for storage for the plaintiff, had no notice of the plaintiff's owning any merchandise upon his premises, and, so far as I can see, was under no obligation to either store this merchandise for the plaintiff, or deliver them to the plaintiff on demand. The defendant never voluntarily accepted any of the plaintiff's assignor's goods for storage, and there is no statement that he or his employés ever knew that there was any merchandise upon McDonald's truck when it was returned to the stable for storage during the night. I cannot see that defendant was under any obligation to store it, protect it, or deliver it to the plaintiff's assignor. If the defendant had received notice that this merchandise belonged to the plaintiff's assignor, and after such notice had delivered it to a stranger, a different question would have been presented; but, in the absence of some notice to the defendant or his employés that there was merchandise upon the truck which belonged to the plaintiff's assignor, or to which he was entitled, I cannot see that an obligation existed on the part of the defendant to protect this merchandise, or that the defendant was liable for its value because the same was not delivered to plaintiff's assignor on demand.

It is plain that a delivery of the merchandise to McDonald would have discharged the defendant from any liability to the plaintiff's assignor. The fact that the truck with the merchandise upon it was

delivered to a stranger, who represented himself as being authorized by McDonald to receive it, could not be a conversion of the plaintiff's assignor's property by the defendant, for the defendant was under no obligation to hold the merchandise to the plaintiff's assignor. To establish a conversion of the property, a demand was necessary; but, when the demand was made, the property was not in defendant's possession. There was not therefore a conversion, nor could the defendant be liable to the plaintiff's assignor for negligence in delivering the truck to the wrong person. As before stated, the defendant owed no duty to the plaintiff's assignor to protect his property, and a liability for negligence must depend upon a duty owed by the defendant to the plaintiff which the defendant negligently performed. The plaintiff, as I understand it, does not claim liability for negligence, but depends upon his cause of action for conversion; but, to hold the defendant liable for conversion, it must appear that he assumed and exercised dominion or control over the property, and, having possession, refused to deliver it to the owner.

The case of McKillop v. Reich, 76 App. Div. 334, 78 N. Y. Supp. 485, is plainly not applicable, as in that case the carriages in which the personal property was contained were delivered to the defendant by the plaintiff. The personal property in the carriages was taken from them and, under the direction of the person found in charge of the stable, was placed in the office, and defendant notified that the plaintiff had left the articles in the office, to which the defendant responded, "All right." He thereby became a bailee of the property for the plaintiff, and under those circumstances was held liable for the return of the articles. But in this case the absence of any notice to the defendant that the plaintiff's assignor's goods were upon his premises or under his control, or that he ever assumed or exercised volition over them, relieves him from liability.

I think therefore there must be judgment for the defendant.

LAUGHLIN and HOUGHTON, JJ., concur.

CLARKE, J. I dissent. It is established by the statement of facts that, notwithstanding the signs and notices "Loaded trucks not allowed in stables," "Not responsible for merchandise left on vehicles," the practice of leaving loaded trucks at the stable had been permitted by defendant for 10 years. It is also established that the defendant's employés, in the regular course of their duties, unhitched the horse attached to McDonald's truck containing the merchandise in controversy, and put the truck in its usual place in the stable. It is also established that the defendant himself, on the morning of September 4, 1907, harnessed the horse to the truck and personally delivered the horse, truck, and goods to an entire stranger, who was a thief.

The plaintiff's cause of action is not based upon a conversion of the goods by the defendant to his own use, nor upon a loss of the goods by accident while in the defendant's possession, but is based upon the active participation of the defendant in delivering them to a wrong person, an entire stranger, who turned out to be a thief. The defendant had the physical possession of the goods because he had in his stable the truck upon which they were loaded, and, notwithstanding his

regulation, he permitted the truck so loaded to be and remain in his stable. I think that for the wrongful delivery the real owner has a right of action. "The degree of negligence which is exacted of each of the several classes of bailees in respect to the care of the thing bailed has no application to the liability of the bailee in respect to its return or delivery. Every bailee is bound at his peril to know that the person to whom he delivers the chattel is the proper person to receive it, and if he delivers it to the wrong person, though acting in perfect good faith, he is nevertheless liable for its conversion." 3 Am. & Eng. Encyc. of Law (2d Ed.) 754, quoted in Sonn v. Smith, 57 App. Div. 372, 68 N. Y. Supp. 217.

In Willard v. Bridge, 4 Barb. 361, the court said:

'The judge charged the jury that if they believed the hops had been, by negligence or mistake, delivered to Newbury, or any one else but the true owner, it was a conversion by the defendant. * * * But the cause was tried and submitted to the jury upon the assumption that the property had been taken by some person other than the owner from the warehouse of the defendant, and the jury have found that it was delivered to such person by the mistake or negligence of the defendant; that is, by his act, and not by his mere omission, the property has been lost to the plaintiff. This in law is a conversion of the property for which the defendant is liable in an action of trover."

In Esmay v. Fanning, 9 Barb. 176, the court said:

"The question therefore becomes narrowed down to this: Whether a bailee of a chattel is answerable in trover, on showing a delivery to a person not authorized to receive it. In Devereaux v. Barclay, 2 Barn. & Ald. 702, it was held that trover will lie for the misdelivery of goods by a warehouseman, although such misdelivery was occasioned by mistake only, and this court, in Packard v. Getman, 4 Wend. 613, 21 Am. Dec. 166, held that the same action would lie against a common carrier, who had delivered the goods by mistake to the wrong person. * * * If trover will lie against a common carrier or a warehouseman for a misdelivery, it can. under like circumstances, be sustained against a bailee for hire, or a gratuitous bailee."

In McKillop v. Reich, 76 App. Div. 334, 78 N. Y. Supp. 485, the defendant was the keeper of a livery stable. Two carriages were driven to the defendant's stable to remain during a wedding entertainment. Certain personal property contained in the carriages was taken from them, and, under the direction of the person who was found in charge of the stable, these articles were placed in the office. The defendant was outside of the stable at the time, and plaintiff told him he had left the articles in the office, to which the defendant responded, "All right." Subsequently plaintiff was unable to get his personal property deposited in the office, and some time later he made a personal demand on the defendant for a return of his property, which was not returned, and the defendant declined to return the property, or to give any explanation for his refusal. The court said:

"Under these circumstances, the rule is well established that even a gratuitous bailee is liable for the goods"—citing cases.

It is attempted to distinguish this case from the one at bar, because in the McKillop Case the defendant said, "All right," when told that the personal property had been put in the office; but that simply indicated knowledge and acquiescence, and said knowledge and acquies-

cence are supplied in the case at bar by the receipt of the truck with the goods on it by the defendant's employés, their storing it in a given place, and is stronger against the defendant because of his active participation the next morning in hitching up the team and in personally delivering it with the goods to an entire stranger.

I think, upon the conceded facts, the judgment should be for the plaintiff for $1,228.29.

McLAUGHLIN, J., concurs.