BERRY *v.* CADILLAC STORAGE CO.

1. Bailments—Household Furniture and Belongings Do Not Include Jewelry.

Contract to pack and ship furniture and household belongings included everything that is usually found in dwelling house tending to comfort and enjoyment of household, but not small box containing jewelry of value of $2,000.

2. Same—Bailee Not Liable for Jewelry Not Specially Intrusted.

Where small box containing jewelry valued at $2,000 was unintentionally left in apartment by owner and was not specially intrusted to bailee hired to pack and ship furniture and household belongings, latter is not liable for its loss.

3. Same—Negligence—Degree of Care Required of Bailee for Hire.

Bailee hired to pack and ship furniture and household belongings was not insurer, but was bound to keep and preserve said property with that care which prudent man ordinarily takes of his own property, and bestow upon said goods that degree of care which their known nature and intrinsic value demanded.

4. Contracts—Construction.

Contracts must be construed with reference to their subject-matter.

Appeal from Wayne; Driscoll (George O.), J., presiding. Submitted April 21, 1932. (Docket No. 143, Calendar No. 36,462.) Decided June 6, 1932.

Assumpsit by L. K. Berry against Cadillac Storage Company, a Michigan corporation, for damages alleged to have been sustained because of negligence in performance of a contract to pack and ship household goods. Judgment for plaintiff. Defendant ap-

On bailee for hire or mutual benefit as exercising ordinary care and diligence, see annotation in 26 A. L. R. 228; 40 A. L. R. 880; 42 A. L. R. 1304.

peals. Reversed and remanded and judgment ordered entered for defendant.

*Atkinson, Ortman & Shock* (*Frank J. Ortman,* of counsel), for plaintiff.

*Kelly & Gilmore,* for defendant.

SHARPE, J. Plaintiff in his declaration alleged that on January 31, 1927, he employed the defendant "to crate and pack the furniture and household belongings of the plaintiff, and to ship them to plaintiff's new residence in Upper Darby, Pennsylvania;" that defendant represented that it was "fully covered by insurance," and that it "would assume full responsibility of the goods while in its care, and that the plaintiff need have no fear of any of them being stolen, or lost;" that defendant did "pack and crate the belongings of the plaintiff," and shipped them to his new residence, but that when they arrived there a box containing jewelry of the value of $2,258 was missing, and that its loss was caused by "the careless, negligent and reckless manner in which same was handled by the said defendant, its agents, servants or employees." To this the common counts were added. The plea of the defendant was the general issue.

On trial before the court without a jury, the plaintiff had judgment for $1,858, from which defendant has appealed.

Plaintiff's right to recover rests entirely on the testimony of his wife, Vesta Gaines Berry, except that her statement that the jewelry box was not in the shipment when it arrived at Upper Darby is corroborated by that of her daughter, who assisted her in unpacking it. Her testimony may be summarized as follows: That defendant's employees

came to their home and were engaged in the packing on the day they left; that she just packed her own personal things, and left everything else in the apartment; that they were assured that "everything would be all right," and gave them the key to the apartment; that she next saw the goods when they arrived by train in Upper Darby; that she intended taking the box of jewelry with her, that she had kept this box, which was about 4 x 4 x 6 inches in size, "in the horn or back of the horn" in their victrola; that on the morning of the day they left, her son Jack, 13 years old, asked for some money belonging to him that she had and had kept in the box; that she "told him where it was and when he got his money out to take my box and put it in my hat box;" that on their way to the depot to take the train she asked him if he had put it in the hat box, and he said he had left it on the window seat; that when at the depot she did not call the apartment and tell the packer that the jewelry box had been left on the window seat, nor in any way notify the defendant of the fact that it had been left there, until the box was missing when the shipment arrived at Upper Darby; that the jewelry box was not locked, although there was a lock on it, and that she did not personally see the boy leave it on the window seat.

John Novak testified that he was at that time employed by the defendant as a "packer and furniture repair man;" that he packed all of the household goods left in the house by the plaintiff, a part on the day the family left and the balance the next day; that the key to the apartment was left in the door, and he locked it when he left; that "the party downstairs had a key to the bottom door and they let me in in the morning. The top door, I had a key to that;" that the goods were taken to the ware-

house and some repairs made and there crated for shipment; and that before he left he swept the floor at plaintiff's request, and was sure nothing was left behind.

The record contains several letters sent by plaintiff to defendant relative to the jewelry box. In the first, written at the time it was first missed, he stated that it was left in the sounding horn in the victrola. In another he stated that—

"It could not have been left on the window seat, as we have checked everything else that we remember having seen there with it, and everything else was sent. It could not have been left behind, as it was in plain view with the other things being put into the barrels and boxes by the packer. We can only conclude that the packer or some one who had access to our belongings in your warehouse, found the box and took it. * * *

"It was there when we left, and the statement that your packer made that he did not remember seeing it at all, seems unreasonable in itself. On the way to the train the day we left, Mrs. Berry said that she had left the jewelry box in the dining room, taking only two of her rings with her, and rather than to have the taxi turn around and possibly miss the train, I reassured her as to the honesty of your employees and the responsibility of your company for all the things left in your care for forwarding to us here."

And in another he stated:

"In questioning the children, they say that they saw it on the window seat in the dining room, instead of in the Edison phonograph."

These statements tend strongly to contradict the testimony of Mrs. Berry, above referred to, that she told her son to get it out of the victrola and put it in

her hat box, and that he told her he left it on the window seat.

In the contract between plaintiff and defendant, as alleged in the declaration, the defendant agreed "to crate and pack the furniture and household belongings of the plaintiff, and to ship them to plaintiff's new residence" in Pennsylvania. This contract is in no way qualified by the testimony submitted. It should be held to include everything that is usually found in a dwelling house tending to the comfort and enjoyment of the household. *Webb* v. *Downes,* 93 Minn. 457 (101 N. W. 966). It certainly would not include a small box containing jewelry of the value of about $2,000. *In re Kimball's Will,* 20 R. I. 619 (40 Atl. 847).

The defendant did not knowingly become a bailee of this box of jewelry. It was not specially intrusted to its care for the purpose of shipment, nor can it be said, in the absence of proof, that it assumed, or was chargeable with, any special duty to protect the plaintiff against its loss. The plaintiff did not intend to leave it in the house to be shipped with the other goods. His wife supposed that it had been placed with other personal effects which she was taking with her, and, as she testified, first knew that it had been left behind when, on their way to the depot, she was informed by her son that he had left it on the window seat in one of the rooms.

The contract was one of bailment for hire. Under it the defendant was "bound to keep and preserve the property with ordinary care—that care which a prudent man ordinarily takes of his own property." *Hofer* v. *Hodge,* 52 Mich. 372, 375 (50 Am. Rep. 256, 1 Am. Neg. Cas. 661). It was in no sense an insurer. *Taylor* v. *Downey,* 104 Mich. 532 (29 L. R. A. 92, 53 Am. St. Rep. 472). Contracts must be construed

with reference to their subject-matter. Defendant was bound to bestow upon the goods included in the contract that degree of care which their known nature and intrinsic value demanded. See *Smith* v. *American Express Co.,* 108 Mich. 572; *D'Arcy* v. *Adams Express Co.,* 162 Mich. 363; *Riggs* v. *Bank of Camas Prairie,* 34 Idaho, 176 (200 Pac. 118, 18 A. L. R. 83); *Waters* v. *Beau Site Co.,* 114 Misc. Rep. 65 (186 N. Y. Supp. 731). No duty was imposed on it to protect the plaintiff against the loss of this jewelry. Such loss may well be said to have been attributable to the neglect of the plaintiff to return to the apartment and get it, or at least to have informed the defendant at the earliest possible moment that it had been left there.

The judgment for plaintiff will be reversed and set aside, with costs to appellant, and the cause remanded with direction to enter a judgment for the defendant.

CLARK, C. J., and MCDONALD, POTTER, NORTH, FEAD, WIEST, and BUTZEL, JJ., concurred.