WILLIS v. JENSEN et al.

No. 5065. Decided May 19, 1933. (22 P. [2d] 220)

*Irvine, Skeen & Thurman,* of Salt Lake City, for appellant.

*Henry D. Moyle,* of Salt Lake City, for respondent.

EPHRAIM HANSON, Justice.

The plaintiff commenced this action against the defendant to recover the value of two extra tires with tubes, alleged to be a part of the ordinary and regular equipment of a Whippet sedan, which, on June 28, 1928, was stored with the defendant who kept a public garage in Salt Lake City, and also the value of merchandise contained in four sample cases which were in said automobile at the time of its storage.

The complaint contains two causes of action. The first cause of action alleges the storage of the automobile and the equipment and contents above mentioned; and it is alleged that the plaintiff was using the car for the purpose of transporting merchandise from place to place while acting as a traveling salesman, and that on the date above mentioned, he drove his car into the North Temple Garage, that being the garage operated by the defendant, and delivered the same with its contents to the defendant for storage. That when the defendant received the car, he gave the plaintiff a storage check, and that the plaintiff thereupon became obligated to pay the defendant the usual storage charges thereon; that at the time of the delivery of the car to the defendant the above-mentioned extra tires and tubes and merchandise were in the car. The plaintiff alleges that on June 29, 1928, he tendered to defendant the amount of the storage charges on the automobile and contents, together with the claim check, and demanded redelivery of the automobile and contents, but the defendant failed and refused to deliver same to plaintiff; and that the automobile, tires, and tubes and the merchandise were of the reasonable value of $1,483.67, for which amount he asked judgment.

The second cause of action alleges that on and after June 29, 1928, the defendant wrongfully deprived plaintiff of

the use of said automobile for a period of six days, and that the reasonable value of the use of the car during that period was $15 per day; and prayed judgment for the sum of $90.

The defendant's answer to each cause of action is a general denial, except that he admits that at the time stated in the complaint he was operating the public garage therein mentioned, and receiving automobiles for storage; and he admits that on June 28, 1928, the plaintiff drove an automobile into defendant's place of business; that defendant received the car and delivered to plaintiff a storage check; and that plaintiff thereupon became obligated to pay the usual storage charge.

The evidence, consisting solely of the plaintiff's testimony, shows, or tends to show, the following facts: That on June 28, 1928, and for several years prior thereto, the plaintiff was a traveling salesman representing three lines of merchandise, with Montana, Wyoming, Idaho, and Utah as his territory. He traveled and carried his sample cases in a Whippet sedan. On June 28, 1928, he arrived in Salt Lake City from Kemmerer, Wyo., and drove to his brother's home. He accepted an invitation to stay at his brother's home that evening. On his brother's recommendation he put his car in the North Temple Garage, operated by defendant. The plaintiff testified that he "just drove in there and got a claim check and went over to his (the brother's) home." And further: "There was nothing said. He just gave me the check and I didn't ask no questions as to what it was going to cost me."

The next morning at about 9 o'clock, the plaintiff returned to the garage and presented the claim check; and about noon he talked with the defendant, who, in the langauge of the plaintiff, "said there was a slight, a little, slight mistake with the night man; it was a misplaced confidence, or something of that kind, and he would do what he could to regain and get hold of the car and also the stuff that was in it." At that time the plaintiff demanded his car. Later in the day the plaintiff received notice from the defendant that

the car had been recovered; and, still later in the day, the plaintiff saw his car at the garage. The defendant washed the car and then requested the plaintiff to leave it in the garage for a few days, "to see if we couldn't recover the merchandise which was gone from the car"; and plaintiff did not object. The plaintiff took the car out of the garage six days later, although meanwhile there was nothing to prevent him from taking it, except as he testified he thought that by so doing he would relieve the defendant of his obligation. The storage check above mentioned contained, besides the address and telephone number of the garage, the words and figures: "North Temple Garage," "Storage Check," "No. 3950," and "A. A. A."

The two extra tires and tubes were in or attached to the car and were of the conceded value of $30; and inside the car, which was closed, were the four sample cases, containing samples of the merchandise the plaintiff was selling. These cases contained assortments of knit wear, consisting of ladies', men's, and junior sweaters, infants' complete suits, sweaters, and hoods, caps and gloves, mufflers, ties, belts, buckles, suspenders, ladies' wash dresses and silk underwear, and infants' silk and cotton underwear. In the opinion of the plaintiff, all this merchandise was of the reasonable value of $1,470. The plaintiff was positive the sample cases and merchandise were in the car at the time it was stored. At the time he surrendered the storage check and received his car, which was about July 5, 1928, the plaintiff demanded the return of the merchandise.

At the close of plaintiff's evidence the defendant moved for a nonsuit as to both causes of action, and the same was granted as to the second cause of action. Each side then moved for a directed verdict in his favor, the motion of defendant being denied and that of the plaintiff being granted, but, on the motion of the defendant's counsel, for the sum of only $30, the conceded value of the extra tires and tubes. The court thereupon instructed the jury to return a verdict for the plaintiff in the sum of $30, the value of the tires

and tubes. The verdict was accordingly given and this appeal is from the judgment thereupon entered.

The only specifications of error which we deem it necessary to notice are: (1) The court erred in granting defendant's motion for a nonsuit on the second cause of action; and (2) the court erred in denying plaintiff's motion for a directed verdict on the first cause of action for the full amount for which he prayed.

The plaintiff tried the case in the district court as it is here submitted on the theory that there was a bailment of the automobile and its contents, which had been misdelivered, and, consequently, converted by the defendant. The ground of his motion for a directed verdict was that the defendant "had failed and refused to deliver the car or its contents, or any of the property, to the plaintiff, having previously delivered it to another party without exacting the surrender of the claim check," etc. The trial court granted the motion, as to the spare tires, on the ground of such conversion.

The plaintiff argues, in this court, that there is no question of negligence involved; and further, that: "In this case we contend the evidence shows that the defendant delivered the car and its contents to another without the surrender of the claim check, and it is clearly established and admitted that the defendant did not on the plaintiff's demand redeliver the car and/or its contents to plaintiff. It must follow then, that the defendant breached his contract; and again, as stated in the Potomac Case (*Potomac Ins. Co.* v. *Nickson,* 64 Utah 395, 231 P. 445, 42 A. L. R. 128) the law does not inquire whether he did so in good faith or through negligence, or otherwise, under the decision of the Potomac Case, and the authorities therein cited, when the defendant failed to return the car, on the plaintiff's demand, he became a converter and liable as such."

The defendant, on the other hand, contended in the trial court, and as he here contends, that the contract of bailment entered into between plaintiff and defendant did not cover

the contents of the car, which were in nowise related to the car itself, and of which the defendant had no notice. He conceded that the extra tires were a part of the bailment. The trial court took the defendant's view.

The court did not err in granting a nonsuit as to the second cause of action. There was no evidence that plaintiff's automobile was wrongfully detained by the defendant. The evidence shows that the plaintiff voluntarily left his car at the garage for about six days after its recovery, partly for the reason that defendant suggested it, and partly because of the plaintiff's belief that by taking the car away he would discharge the defendant from liability for the contents of the car. The defendant believed that his possession of the automobile would be a help in the recovery of the contents, and plaintiff acquiesced, although he admitted in his testimony that he was free to take the car at any time.

A decision of plaintiff's second specification of error, viz., that the court erred in denying his motion for a directed verdict for the full amount prayed for in the first cause of action, has been more difficult; but we have concluded that the trial court did not err in limiting the recovery on that cause of action to the value of the extra tires.

The theory of the plaintiff has been that the sample cases and extra tires, along with the automobile in which they were contained, were misdelivered to a person unauthorized by the plaintiff. This theory of misdelivery is necessarily based on a claim that there was a bailment of the sample cases with the merchandise they contained and the tires; such misdelivery being a violation of an absolute duty arising out of a contract of bailment. We think it must be conceded that there was a bailment of the plaintiff's automobile with its equipment, including the spare tires, yet a determination of the question whether the sample cases with their contents were included in the bailment, depends upon facts which we believe are not shown by the record in this case. Upon this question, we concur in defendant's contention that, under the evidence in this case, the contract of bailment

entered into between plaintiff and defendant did not cover the contents of the car which were in nowise related to the car itself, and of which the defendant had no notice.

In 6 C. J. 1104, § 24, it is said that "since the duties and responsibilities of a bailee cannot be thrust upon a person without his knowledge or against his consent, it is essential to a bailment that there be an acceptance of the subject matter."  As was said in *Belmont Coal Co.* v. *Richter* (*Heatherington* v. *Richter*), 31 W. Va. 585, 8 S. E. 609, 610; "A mutual assent is always needful, whether evidence by words or acts; and no one can become responsible, even as a gratuitous bailee, where goods are surreptitiously put in his carriage, or thrust upon his person, without his knowledge or consent, though if, upon ascertainment of this fact, he went on with the trust, this might bind him."  And in *Bertig* v. *Norman,* 101 Ark. 75, 141 S. W. 201, Ann. Cas. 1913D, 943, the court said that the relation of bailment may exist from the fact that the property has come into the possession of a person, even though accidentally or by mistake, but the responsibilities and duties growing therefrom can only exist and continue so long as the party to be charged has and knows, or had notice that he has possession and custody thereof.  The court also stated that acceptance may be proved either directly or by circumstances, but that, in either event, the proof must show that the person to be held knows that he is bailee of the property, or has notice of his possession or custody thereof.

These rules have been often applied in cases of livery stable and garage keepers; and so, in 38 C. J. 88, § 54, the author says: "The duty of a livery stable or a garage keeper to care for articles in vehicles left in his care seems to depend on notice as to the presence of the articles."  More recent cases on the subject are *Rogers* v. *Murch,* 253 Mass. 467, 149 N. E. 202, 203, and *Moss* v. *Jannetti Body Co.,* 101 Pa. Super. Ct. 1.  In the Rogers Case, the plaintiff sought to recover the value of an automobile left with defendant for repairs, and also to recover the value of two spare tires and

tubes, and two fur robes, which respectively were attached to and within the car. The court held that the extra tires and tubes were a part of the equipment and were within the protection of the contract of bailment; but regarding the robes, the court said:

"Upon the pleadings and evidence the plaintiff should not have been permitted to recover the value of the fur robes which were left in the car by the plaintiff. There was no evidence that the defendant or his agents knew of the presence of the robes in the car when the car was left in his custody; nor is there evidence that he undertook to care for them until the plaintiff should call for his automobile."

In that case the car with its contents had been stolen.

In the case of *Moss* v. *Janetti Body Co.*, supra, the plaintiff placed in defendant's custody for one day, her Nash cabriolet. In a rear compartment of the car, the plaintiff had a hat box and traveling bag, containing wearing apparel, etc. The car was stolen from the defendant, but several days later was recovered. The rear compartment had been broken open and the baggage was missing. The plaintiff sued to recover $915, the alleged value of the stolen articles. The court said:

"The crucial question is whether, under all the circumstances, appellant owed appellee any duty to care for the articles concealed in her car; this, in turn, depends upon whether appellant had notice of their presence."

On the question of notice, the court said:

"Admittedly, there was no evidence of express notice. Therefore, the question involved on this appeal is whether, keeping in mind the character and value of the property, there was any evidence from which a jury could properly be permitted to draw the inference that appellant should naturally have expected that the car did or might contain such articles and was accordingly chargeable with constructive notice."

The court held against the plaintiff's contention that the defendant's president must by reason of his business and

experience be presumed to have known that baggage may be carried in such a compartment, for the reason that it was locked when the car was delivered to him and there was nothing about its appearance, in the way of an attached trunk or other visible baggage carrier, to put him upon notice that appellee had left the greater part of her baggage in it.

In the present case there was no express notice of the presence of the sample cases. There is no evidence that the defendant or any of his employees had knowledge of the presence of the cases, or of their contents; neither is there any evidence that the defendant was in the habit of receiving valuable property, other than automobiles. Even if the defendant or his employees had notice or knowledge that the sample cases were inclosed in the automobile, he will not be presumed to have known that they contained merchandise of the value of nearly $1,500, instead of baggage. It would have been unlawful for the defendant to open the cases and inspect the contents. It therefore appears that the sample cases or their contents were not specially intrusted to the defendant's care for the purpose of storage, and it cannot be said, in the absence of proof, that he assumed, or was chargeable with, any special duty to protect the plaintiff against loss. *Berry* v. *Cadillac Storage Co.*, 259 Mich. 104, 242 N. W. 855; *Cohen* v. *Koster*, 133 App. Div. 570, 118 N. Y. S. 142; *Samples* v. *Geary* (Mo. App.) 292 S. W. 1066.

The defendant having explained, at the time plaintiff demanded the return of his car, that it had been delivered to a stranger, and the plaintiff having consistently admitted that explanation, the defendant was not required, after the close of plaintiff's evidence, to further account for the loss of the car, or for the loss of the merchandise because of its presence in the car. It may be that if the defendant had attempted to transfer to the stranger, to whom the car was delivered, any title or right of possession of his own, that then the defendant could not claim that he had never accepted pos-

session of both the car and its contents as bailee. That was the opinion of Judge Lehman in the case of *Cowan* v. *Press-prich,* 117 Misc. 663, 192 N. Y. S. 242; and whose opinion was adopted by the Appellate Division in 202 App. Div. 796, 194 N. Y. S. 926. The only conclusion, in such event, would be that defendant had converted the automobile, together with the merchandise, to his own use. And it is probable that if the defendant had converted the automobile to his own use, he would not have been permitted to say that he was unaware of the presence of the merchandise. *Cohen* v. *Koster,* 133 App. Div. 570, 118 N. Y. S. 142. That would be true in the case of a felonious conversion. 36 C. J. 799, § 221. In closing, we may add that we have examined the case of *Homan* v. *Burkhart,* 108 Cal. App. 363, 291 P. 624. The plaintiff in that case called the attention of the night man at the defendant's garage to the fact that there was a lot of baggage in the car, and that it was valuable, and was assured that it would be perfectly safe. No question was made as to the character of defendant's business, or the scope of the servant's employment.

The judgment of the district court is therefore affirmed. Costs to respondent.

MOFFAT, Justice. I concur.

STRAUP, Chief Justice.

I concur in the result. I do not concur in some of the statements made or reasons given in reaching such conclusion. That is to say, if there was a "delivery" by the bailee of the automobile and of its contents to a stranger, to one unauthorized to receive it, a misdelivery, a wrongful delivery, I think the bailee should be held responsible for all he so wrongfully delivered though he did not attempt or undertake to transfer title, did not attempt to do what he lawfully could not do, receive or take property of one and without right turn it over or give it to another, and then claim nonliability.

However, I think the evidence does not show a delivery or misdelivery to another. All there is to show that is the testimony as to the statement of the bailee, that there was "a slight mistake with the night man; a misplaced confidence or something of that kind." That, in my judgment, was not enough to show a delivery or misdelivery to another.

There thus being no misdelivery shown, I concur in the view that the goods and wares amounting to $1,470 in the sample cases were not covered by the bailment, not because they were not a part of or attached to the automobile, but for the reason that they were of such character ■ or class of wares and goods not usually or customarily carried or used in traveling or contained in automobiles temporarily stored in garages, and no notice given of them nor attention directed to them. There may be some things, not a part of the automobile or attached to it, such as an ordinary traveling bag or suitcase, in the car on the seat or otherwise so open and obvious that but to look is to see it, which, though no notice is given or special attention called to it by the bailor, may nevertheless be covered by the bailment, not only as to the bag or suitcase itself but also as to its contents of ordinary wearing apparel or the like, but not as to unusual things such as money, jewelry, or other unusual things or articles or things not of personal effects ordinarily expected to be carried in a bag or suitcase for personal use in travel. The sample cases or contents thereof do not fall within that class. The cases in the car, let it be assumed, were themselves obvious, but they did not contain anything of personal effects used in travel. What they contained or the value or character of the contents was not disclosed or indicated when the car was left in the garage. The contents consisting of samples of merchandise claimed to be of the value of $1,470 without anything to indicate the character or value or even the presence or existence of them, thus were not within the scope of the bailment, in the absence of express notice which was not given.

ELIAS HANSEN, Justice.

I concur in the result, and in the views expressed in the concurring opinion of Mr. Chief Justice Straup.

FOLLAND, Justice.

I concur in results, and also concur in what is said by Mr. Chief Justice Straup in his concurring opinion.