D. C. Barnette *v*. Joe Casey

(No. 9274)

Submitted January 21, 1942. Decided March 10, 1942.

Kay, Casto & Amos and Vincent V. Chaney, for plaintiff in error.

John T. Simms and L. E. Poteet, for defendant in error.

Fox, President:

Joe Casey complains of the action of the Circuit Court of Kanawha County, in affirming a judgment of the Court of Common Pleas of said county against him and in favor of D. C. Barnette, for the sum of $170.00 and costs.

Barnette instituted his action against Casey before a

justice of the peace and obtained a judgment, from which an appeal was taken to the Court of Common Pleas, where a trial by jury was had, resulting in a verdict upon which the judgment complained of was entered. Casey operated a parking lot in the City of Charleston, and Barnette, a traveling salesman using an automobile furnished him by his employer, delivered the same to an attendant and agent of Casey at the parking lot. With the automobile he delivered three keys: one known as the ignition key, another for a lock on the gasoline tank, and the third a key to a rear compartment or trunk of the automobile. At the time the automobile was delivered, Barnette removed therefrom a small piece of baggage, locked the baggage compartment, and then delivered the keys to the attendant. Two pieces of baggage, in which were packed various articles of wearing apparel, were, in fact, left in the baggage compartment. The cost price of the baggage and the wearing apparel was $297.95. The baggage and the clothing contained therein had been used by Barnette over varying periods of time, all of which appears from the evidence, and the jury, instead of a finding in his favor for the full amount paid therefor, returned a verdict of $170.00, indicating clearly that they gave consideration to the fact that because of the use of the property in question, its value was probably less than the original cost. It may be said at this point that we see no error in the jury's verdict on the question of value; and we can not say that its finding as to value was incorrect, or that any improper evidence was introduced in relation thereto. Furthermore, there does not appear to be any prejudicial error in plaintiff's instruction No. 1. The reference therein to market value is not, in our opinion, justified as stating the correct basis of a finding of value in a case of this character. The market value of secondhand baggage and wearing apparel is necessarily much less than its value to the owner. We think the correct rule would be to ascertain the fair value of the property in question, taking into consideration all of the elements entering into the ascertainment of such value. The contention that this instruction assumes that the property was received by the de-

fendant is not, we think, entitled to serious consideration. In one sense of the word, the property was physically received by the defendant, but whether it was received under such conditions as to make him liable therefor is another question, one determinative of this case, and will be hereafter considered.

It is obvious that this case must be decided upon the law of bailments. "In general, bailment may be said to be a contractual relation. It has been said that a bailment is a contract which is governed by the same rules as are other contracts. Certainly, in a broad sense, the relationship of bailor and bailee results from contract, express or implied. This does not necessarily mean that an agreement *inter partes* is always necessary to create a bailment; it may be created by operation of law. It has been stated as a rule that no particular ceremony or actual meeting of minds is necessary; it is the element of lawful possession, however created, and duty to account for the thing as the property of another that creates the bailment, regardless of whether or not such possession is based on contract in the ordinary sense." 6 Am. Jur. 190. "In the ordinary case, the nature of the bailment requires that there be a delivery by the bailor and an acceptance by the bailee * * *." 6 Am. Jur. 191. "Since the duties and responsibilities of a bailee cannot be thrust upon a person without his knowledge or against his consent, it is essential to a bailment that there be an acceptance of the subject matter." 6 C. J. 1104. "Since, * * * the duties and responsibilities of a bailee cannot be thrust on a person without his knowledge or consent, or against his protest, it is essential to a bailment that there be an acceptance of the subject matter by the bailee. It is not requisite that the acceptance be actual; one that is constructive or implied is sufficient * * * acceptance will not be inferred, however, unless there is something to show notice or knowledge on the part of the alleged bailee that the goods are in fact in his possession, and that they are the property of the bailor." 8 C. J. S. 249.

Under these authorities the delivery of the automobile

at the parking lot, and its acceptance by the attendant in charge, created the relationship of bailor and bailee as to the automobile, and the tools and fixtures connected therewith, and imposed upon the bailee the obligation to exercise reasonable and ordinary care for the safety of the property so delivered. We think it also included any other property in plain view, or of which the bailee had notice, express or implied. There is no evidence in this case that the defendant, bailee, had any notice or knowledge of the two pieces of baggage, or the property contained therein, which were left in the rear or baggage compartment of the automobile, and this raises the question of whether in these circumstances, there was in fact a bailment of this particular property. We must bear in mind that, unless in a case where bailment is created by operation of law, there must be a delivery of the property for safe-keeping by the bailor, and an acceptance thereof by the bailee. We do not think that, in this instance, the bailee was called upon to assume that there was any property in the automobile other than the tools, tires, etc., which might reasonably be expected to be carried therein. The general rule as stated in 38 C. J. 88 with relation to the duty of a livery-stable keeper or a garage keeper is that, "The duty of a livery-stable keeper or a garage keeper to care for articles in vehicles left in his care seems to depend on notice as to the presence of the articles." The rule is clear that in cases where notice is brought home to the bailee, he will be held liable. We think in the absence of notice, actual or constructive, he would be held not liable, and a contrary rule applied. This principle is affirmed in *Moss* v. *Jannetti Body Co.,* 101 Pa. Superior Ct. Rep. 1. In *Rogers* v. *Murch,* 253 Mass. 467, 149 N. E. 202, it was held: "Where plaintiff left his automobile in defendant's garage for repairs, and neither defendant nor his agents knew of presence of robes therein, nor undertook to care for them, plaintiff could not recover value thereof in suit to recover for automobile stolen from garage." In *Schulte, Inc.* v. *North Terminal Garage Co.,* 291 Mass. 251, 197 N. E. 16, it was held: "Where garage keeper or his agents had no knowledge that stored truck

contained valuable merchandise and agents permitted unknown persons to take truck from garage, garage keeper was not liable for value of merchandise." In that case it was stated that liability of the bailee may not be thrust upon him without his knowledge or consent, although recognizing that acceptance of property may be implied. In *Willis* v. *Jensen,* 82 Utah 148, 22 Pac. 2d 220, it was held: "Proprietor of garage in which traveling salesman stored automobile for night held not liable to owner for sample cases of merchandise in automobile at time of storage in absence of notice of their presence or existence." See also *Samples* v. *Geary,* (Mo. App.) 292 S. W. 1066.

In some circumstances involving property stolen from bailee, or lost through his negligence, the bailee has been held liable. *Woodruff* v. *Painter,* 150 Pa. St. Rep. 91, 24 Atl. 621, 16 L. R. A. 451, 30 Am. St. Rep. 786, was a case where a customer in a shop engaged in making a purchase was invited to lay aside his wearing apparel which contained a watch, an article customarily carried, and the storekeeper was held for its negligent loss. This rule was later applied in *Hunter* v. *Reed,* 12 Pa. Superior Ct. Rep. 112, but in that case a diamond ring, not designed to be carried in the fob pocket of a pair of trousers was held to be outside the rule. In *Mulhern* v. *Public Auto Parks, Inc.,* 296 Ill. App. 238, 16 N. E. 2d 157, recovery was allowed where a bag in the back of a car was called to the attention of the attendant, and there was a promise that it would be safely kept. In *Wendt* v. *Sley System Garages,* 124 Pa. 224, 188 Atl. 624, the bailee was held liable, even though the check he gave in return for the property received, stipulated that he was not responsible for fire and theft, and that all valuables must be checked. The question of concealed baggage was apparently not touched upon in that case, nor was that particular point raised in *Mee* v. *Sley System Garages,* 124 Pa. Super. 230, 188 Atl. 626, where the suitcase in question was left in the back seat of the automobile, and extended for several inches above the back of the front seat, and, therefore, apparently in plain view. In *Campbell* v. *Portsmouth Hotel Co.* (N. H.),

20 Atl. 2d 644, 135 A. L. R. 1196, the hotel company was held liable for negligence, resulting in the loss of equipment and baggage left in the car, although the company had no actual knowledge of the presence of such articles. This was a case where the hotel operated a garage for its guests, and we think it may be distinguished from a case involving a parking lot, because of the general liability of a hotel to care for the person and property of its guests.

We have gone to some length in discussing the authorities governing this question because it is new in this State. We find no decision of this Court which throws any light thereon. We realize its importance to the traveling public, and do not overlook the importance of defining the duties of a parking lot proprietor, having regard to the interests of such proprietor, and the public as well. We know of no reason that would require us to prescribe a rule for such a bailment different from that applied to bailments of like general nature such as garages, and, in earlier days, to livery-stables. Reason and authority suggest that in every case the bailee should be liable for such property only as he undertakes to store and return to the owner. He should not be made liable for property of which he has no knowledge. This does not mean that actual knowledge must be brought home to him in every case. There is ample room for what may be termed implied or constructive notice. For example, he would be charged with constructive knowledge that a piece of baggage probably contained property of some value, although he might not know the particular type of property or the value thereof, contained therein. He probably would not, in the absence of actual notice, be liable for extremely valuable property such as jewelry, or a type of property not ordinarily carried as baggage and left in a vehicle. However, in this case Casey was not given notice, actual or constructive, that there was any baggage or property of any kind left in the automobile which Barnette left with him. The judgment of the Circuit Court can be sustained only on the theory that when one drives an automobile into a parking lot, and delivers the keys thereof to the

proprietor or his agent, such proprietor, independently of knowledge or lack of knowledge, at once becomes liable not only for the automobile, and the tools and equipment which go with it, but for any baggage which may be in the automobile, even though the same be concealed and locked up in a rear compartment. We can not so hold. If drivers of automobiles desire to hold keepers of parking lots and garages liable for property left in automobiles committed to their charge, the party to whom the car is so committed should be notified of any concealed baggage. If such baggage is in plain view, no such notice is required, because when in plain view it is treated as a part of the property accepted for safe-keeping.

The result of our observations is that the judgment of the Circuit Court of Kanawha County be reversed, and the cause remanded to the Court of Common Pleas for a new trial.

*Reversed and remanded.*