ERVIN, Circuit Judge:
 

 James E. Nunley, trustee in bankruptcy for the debtor, Chloe Creek Corporation (Chloe Creek), appeals from the order of the district court reversing the bankruptcy court’s decision that Ingersoll-Rand Financial Corporation (Ingersoll-Rand) had not perfected its security interest in certain mining equipment in accordance with Article IX of the Uniform Commercial Code. The district court held that Ingersoll-Rand’s security interest in the mining equipment was perfected under UCC § 9-305 and, therefore, superior to the lien creditor status of Chloe Creek’s trustee in bankruptcy, because the mining equipment was in the possession of a bailee who had received notice of Ingersoll-Rand’s security interest in the equipment. We find no error in the decision of the district court and, accordingly, affirm.
 

 I.
 

 Chloe Creek, a coal mining company chartered in Kentucky with its principal place of business in Virginia, purchased certain mining equipment from D.M.C., Inc. (D.M. C.). Ingersoll-Rand had financed the equipment for D.M.C. and Chloe Creek agreed to assume D.M.C.’s obligation to Ingersoll-Rand.
 

 Chloe Creek used the equipment to mine coal at a deep mine in Kentucky for several months. On July 28, 1979, Chloe Creek moved its mining operation and equipment to West Virginia to perform contract mining services for Eastern Resources (Eastern) on Eastern’s property. Although In-gersoll-Rand had filed a financing statement for the equipment in Kentucky and Virginia, a financing statement was not filed in West Virginia.
 

 Eastern was informed by Chloe Creek during contract negotiations that Ingersoll-Rand had a security interest in Chloe Creek’s mining equipment. In a letter dated August 20, 1979, Chloe Creek authorized Eastern to deduct equipment payments from monies due Chloe Creek under the contract and to transfer the payments directly to Ingersoll-Rand. The letter contained a schedule of future payments, a notation that $10,379.70 should be paid to Ingersoll-Rand to bring Chloe Creek’s account current, and a statement that In-gersoll-Rand could immediately repossess the equipment if payments were not made according to the schedule. On September 10, 1979, Eastern issued a check to Inger-soll-Rand for $10,379.70 in accordance with the letter.
 

 Chloe Creek mined coal for Eastern until November, 1979, when Chloe Creek terminated operations at the mining site.
 
 [1]
 
 East
 
 *844
 
 ern then began using the Chloe Creek equipment to mine coal at the site. On November 14, 1979, Eastern made a final payment of $5,649.55 on the equipment to Ingersoll-Rand.
 

 On February 27, 1980, Ingersoll-Rand wrote to Chloe Creek with notice that Chloe Creek was in default and that the equipment would be repossessed and sold. Chloe Creek filed a petition in bankruptcy on February 29, 1980, at which time the mining equipment was still in Eastern’s possession.
 

 Ingersoll-Rand contended that its claim to the equipment was superior to the trustee in bankruptcy’s claim because its security interest was perfected under two Article IX provisions of the West Virginia Uniform Commercial Code.
 
 [2]
 
 Ingersoll-Rand first argued that the mining equipment was “mobile” within the meaning of § 9-103(3) and that its security interest, therefore, was perfected when a financing statement was filed in Virginia, where Chloe Creek maintained its principal place of business. In-gersoll-Rand also argued that its security interest was perfected under § 9-305 because Eastern was in possession of the mining equipment as a bailee with notice of Ingersoll-Rand’s security interest.
 

 The bankruptcy court rejected both arguments and held that Chloe Creek’s trustee in bankruptcy had a prior claim to the mining equipment because Ingersoll-Rand had not perfected its security interest. The district court reversed, finding that Inger-soll-Rand had a perfected security interest in the mining equipment. Although the district court agreed that the mining equipment was not “mobile” within the meaning of § 9-103(3), it found that Ingersoll-Rand had satisfied the “bailee with notice” provision of § 9-305.
 

 II.
 

 Under the Bankruptcy Code, the trustee in bankruptcy acquires the rights of a judgment lien creditor as of the date the bankruptcy petition is filed. 11 U.S.C. § 544(a) (1979);
 
 see, e.g., In re Copeland,
 
 531 F.2d 1195, 1199-1200 (3d Cir. 1976). The trustee’s rights as a judgment lien creditor are governed by applicable state law.
 
 See id.
 
 Section 9-301(l)(b) of the Uniform Commercial Code provides that the trustee’s interest is superior to all other security interests in the bankrupt’s property except those perfected under state law pri- or to the date the bankruptcy petition is filed. Ingersoll-Rand argues that its security interest is perfected under both § 9-103(3) and 9-305 of the Uniform Commercial Code.
 

 Section 9-103(3) provides that a security interest in “mobile” goods is perfected by filing a financing statement in the state where the debtor maintains its principal place of business. An interest in nonmobile goods, on the other hand, is perfected by filing a financing statement in the state where the goods are located.
 

 In this case, Ingersoll-Rand filed a financing statement in Virginia, where Chloe Creek maintained its principal place of business, but not in West Virginia, where the equipment was located. Ingersoll-Rand, therefore, had perfected by filing only if the mining equipment was “mobile” within the meaning of § 9-103(3). We think that it is unnecessary to consider the somewhat complicated issue of mobility in this case because we find that Ingersoll-Rand had perfected its security interest by virtue of § 9-305.
 

 Section 9-305 provides in pertinent part: A security interest in ... goods ... may be perfected by the secured party’s taking possession of the collateral. If such collateral other than goods covered by a negotiable document is held by a bailee, the secured party is deemed to have possession from the time the bailee receives notification of the secured party’s interest.
 

 The rationale underlying perfection pursuant to § 9-305 is that “the debtor’s lack of
 
 *845
 
 possession coupled with actual possession by the creditor, the creditor’s agent or the bailee serves ‘to provide notice to prospective third party creditors that the debtor no longer has unfettered use of [his] collateral.’ ”
 
 Heinicke Instruments Co. v. Republic Corp.,
 
 543 F.2d 700, 702 (9th Cir. 1976) (citing
 
 In re Copeland,
 
 391 F.Supp. 134, 151 (D.Del.1975)).
 

 Thus, in deciding whether Ingersoll-Rand has perfected its security interest in the mining equipment under § 9-305, we must decide whether Eastern held the equipment as a bailee and, if so, whether Eastern had received notice of Ingersoll-Rand’s security interest in the equipment.
 

 Bailment is defined broadly under West Virginia law. Although the bailment relationship normally arises from either an express or implied contract, a bailment may be created by operation of law rather than by agreement between the parties.
 
 Barnette v. Casey,
 
 124 W.Va. 143, 19 S.E.2d 621, 623 (1942). In
 
 Barnette v. Casey, supra,
 
 the Supreme Court of West Virginia stated that “no particular ceremony or actual meeting of minds is necessary; it is the element of lawful possession, however created, and duty to account for the thing as the property of ■ another that creates the bailment, regardless of whether or not such possession is based on contract in the ordinary sense.”
 
 Id.
 
 Although acceptance is required to create a bailment, the acceptance may be constructive as in a case where a person takes possession of property left by the owner.
 
 See Walker v. Norfolk & W.R. Co.,
 
 67 W.Va. 273, 67 S.E. 722 (1910).
 

 In this case, Chloe Creek left the mining equipment in Eastern’s possession for the benefit of all parties concerned. Eastern had use of the mining equipment, Ingersoll-Rand was being paid by Eastern, and Chloe Creek’s obligation was being partially discharged by the payments. This arrangement can be perceived as an implied contract whereby Eastern was holding the mining equipment for its own use, to be returned to Chloe Creek at some later date. We believe that the implied contract created by these circumstances is properly char-acterized as a bailment under the law of West Virginia.
 

 With respect to the notification requirement of § 9-305, it is clear that Eastern had notice of Ingersoll-Rand’s security interest in the mining equipment. Eastern was informed of Ingersoll-Rand’s security interest both verbally and by the letter dated August 20, 1979. The fact that Eastern made equipment payments to Ingersoll-Rand on behalf of Chloe Creek also established that Eastern was aware of the security interest.
 

 We find that Eastern’s possession of the mining equipment, which adequately notified prospective creditors that Chloe Creek no longer had unfettered use of the mining equipment, satisfied the notice function underlying the “bailee with notice” provision of § 9-305.
 
 See In re Copeland,
 
 531 F.2d 1195 (3d Cir. 1976). We hold, therefore, that Ingersoll-Rand has a perfected security interest in the mining equipment which is superior to the trustee’s interest as a judgment lien creditor. Accordingly, the decision of the district court is
 

 AFFIRMED.
 

 [1]
 

 . Three of Chloe Creek’s four principals, however, had terminated mining operations around October 10, 1979.
 

 [2]
 

 . See W.Va.Code § 46-9-101
 
 et seq.
 
 West Virginia has adopted the Uniform Commercial Code in substantial part. Section references hereinafter will be to the Uniform Commercial Code rather than to the West Virginia Code for the sake of clarity.