In re David A. CRABTREE, a/k/a
West Knoxville Investment
Company, Inc., Debtor.

D. Broward CRAIG, Trustee, Plaintiff,

v.

UNION COUNTY BANK, Defendant,

James R. Martin, Trustee of the Estate
of C.H. Butcher, Jr.; Garrett
Enterprises, Inc., Intervenors.

Bankruptcy No. 3–83–01116.
Adv. No. 3–84–0353.

United States Bankruptcy Court,
E.D. Tennessee.

April 12, 1985.

J. Michael Winchester, Knoxville, Tennessee for intervenor, Garrett Enterprises.

## MEMORANDUM

CLIVE W. BARE, Bankruptcy Judge.

At issue is whether the debtor's estate has an interest of consequential value or benefit entitling the trustee to turnover of a debenture and a stock certificate. 11 U.S.C.A. § 542(a) (1979). Denying the estate has any equity in the debenture and stock, Union County Bank (UCB) asserts it has a perfected security interest and that it is entitled to relief from the automatic stay to enforce its interest. 11 U.S.C.A. § 362(d)(2) (Supp.1985). The trustee contends UCB does not have a perfected security interest because it did not take possession of the debenture and stock certificate until six months after the commencement of the debtor's case. Tenn.Code Ann. § 47–9–305 (1979). Also, the trustee maintains the debtor's note held by UCB is usurious and thus unenforceable under Tennessee law. Tenn.Code Ann. § 47–14–117(a) (1984).

### I

An involuntary chapter 7 petition was filed against David A. Crabtree (debtor) on July 14, 1983. An order for relief was entered on August 22, 1983. Plaintiff D. Broward Craig is serving as trustee for the debtor's estate.

In 1981, Mississippi Coast Properties, Inc. (MCP) raised several million dollars to purchase a resort hotel. Six million dollars was raised through the sale of $400,000 investment units to fifteen investors. In exchange for $400,000 each investor received from MCP a $350,000 seven-year, subordinated debenture and two hundred and fifty (250) shares of no par value MCP common stock. The debtor, one of the fifteen investors, funded his $400,000 investment through loans of $350,000 and $50,000 from two different banks. Only the $350,000 loan is relevant in this case.[1]

Cadwalader, Wickersham & Taft, Mark C. Ellenberg, Washington, D.C., Walker & Walker, P.C. John A. Walker, Jr., Knoxville, Tenn., for plaintiff.

Stephen R. Moseley, Donald K. Vowell, Knoxville, Tenn., for defendant Union County Bank.

James R. Moore, Knoxville, Tenn., for intervenor, James R. Martin, Trustee of the estate of C.H. Butcher, Jr.

---

1. The $50,000 loan, obtained from City and County Bank of Jefferson County, Tennessee, was an unsecured loan.

Bank of Cumberland (BOC) in Burkesville, Kentucky, made the $350,000 loan to the debtor in exchange for his promissory note. BOC's loan was effected through a debit of its correspondent bank account at, and a deposit to debtor's account with, United American Bank of Knoxville, Tennessee. Debtor's note, dated July 15, 1981, and having a maturity date of July 15, 1983, provides for quarterly interest payments. The stated rate of interest is variable: "Chemical Bank Prime + 1%." The face of the note reflects it is secured by an assignment of the $350,000 debenture and two hundred and fifty (250) shares of MCP common stock. According to its president, James Meredith, BOC received debtor's note, the debenture, and a certificate representing two hundred and fifty (250) shares of MCP stock in a package mailed from Tennessee. The debenture and stock certificate were placed in BOC's security vault on September 29, 1981.

On or about June 23, 1983, BOC transferred without recourse its interest in six notes, including debtor's $350,000 note, to C.H. Butcher, Jr. The notes and BOC's corresponding loan files were delivered to Butcher's representative, Tim Ellis, currently president of UCB. Through a mutual mistake the security for debtor's note (the debenture and MCP stock certificate) was not delivered to Ellis with the note. Thereafter, on an indefinite date but prior to July 14, 1983 (commencement date of debtor's case), Butcher transferred debtor's note to Garrett Enterprises, Inc. (Garrett).[2] A letter agreement, dated July 27, 1983, provides for assignment by Garrett of debtor's $350,000 note to UCB for the purpose of collection. UCB is entitled to retain twenty-five (25) percent of the proceeds collected on the note or $25,000, whichever is less, plus expenses.[3] UCB knew the debtor's note was in default and that an involuntary bankruptcy petition had been filed against him when Ellis, acting on behalf of UCB, accepted Garrett's proposed assignment. On August 9, 1983, Garrett endorsed debtor's note to the order of UCB.

Ellis simply assumed the collateral for debtor's note was in the file when he accepted it on behalf of UCB. He phoned Meredith at BOC in January 1984, after discovering UCB did not have possession of either the debenture or the MCP stock certificate. Ellis informed Meredith that UCB held debtor's $350,000 note and inquired about the whereabouts of the collateral. Meredith discovered that the debenture and stock certificate were still in BOC's security vault. He retrieved the two instruments from the security vault and mailed them to UCB on January 17, 1984.

II

An interpleader action related to MCP is pending in the district court. Each of the fifteen investors, or their assignees or successors in interest, will recover approximately $150,000 upon presentation of his debenture and MCP stock certificate.

On October 17, 1984, UCB filed its motion for relief from the automatic stay. UCB asserts it is a holder in due course of debtor's $350,000 note and that it has a perfected security interest in the debenture and stock certificate, the only security for the note. Since no payment has ever been made against the $350,000 principal indebt-

---

2. Butcher also transferred to Garrett the other notes he had received in the package from BOC. James R. Martin, Butcher's trustee in bankruptcy—an order for relief under chapter 7 was entered against C.H. Butcher, Jr., on July 15, 1983—challenged Butcher's transfer to Garrett of debtor's note and the other notes. *Martin v. Garrett Enterprises, Inc.*, Adv.Proc.No. 3-84-0314. Though Garrett contends it acquired its interest in the notes from Red Wind, Inc., a Florida corporation, and not from Butcher, a consent judgment has been entered. The consent judgment recites in part that Butcher's transfer is voided and the notes and collateral acquired from, or through, him and in Garrett's possession are to be turned over to Butcher's bankruptcy trustee. However, the rights of UCB as to Crabtree's $350,000 note are preserved. The consent judgment is also subject to the rights, if any, of Red Wind, Inc.

3. The assignment of rights in debtor's note was offered to UCB as additional consideration for UCB's discount purchase of another note held by Garrett.

edness, UCB contends the debtor's estate clearly has no equity in the debenture and stock certificate.

The trustee opposes the UCB motion for relief from stay. On December 4, 1984, the trustee commenced this adversary proceeding demanding turnover by UCB of the debenture and stock certificate.[4] The trustee contends these instruments are property of the debtor's estate subject to turnover; UCB obtained the instruments in violation of the automatic stay; and that UCB's purported security interest in the debenture and stock certificate is not only unperfected but void.

James R. Martin, bankruptcy trustee for the C.H. Butcher, Jr. estate, and Garrett Enterprises, Inc. have filed a joint motion seeking either intervention or consolidation with another adversary proceeding.[5] Their motion to intervene has been granted.

### III

Asserting his rights as a lien creditor under Bankruptcy Code § 544(a),[6] the trustee insists that he is entitled to turnover because no one had a perfected security interest in the debenture and stock when debtor's petition was filed. According to the trustee, any perfected security interest in the debenture and stock terminated on or about June 23, 1983, when BOC assigned debtor's note without recourse to C.H. Butcher, Jr., who failed to take possession of the collateral for the note.

The debenture and stock certificate are "instruments," as defined in Tenn. Code Ann. § 47-9-105(1)(g) (1979).[7] With the exception of the twenty-one (21) day automatic perfection provisions, a security interest in an instrument (other than instruments which constitute part of chattel paper) can be perfected only through possession. Tenn.Code Ann. § 47-9-304 (1979).

Tenn.Code Ann. § 47-9-305 (1979) recites in material part:

*When possession by secured party perfects security interest without filing.* —A security interest in letters of credit and advices of credit (subsection (2)(a) of § 47-5-116), goods, *instruments*, negotiable documents or chattel paper may be perfected by the secured party's taking possession of the collateral. *If such collateral* other than goods covered by a negotiable document *is held by a bailee, the secured party is deemed to have possession from the time the bailee receives notification of the secured party's interest.* A security interest is perfected by possession from the time possession is taken without relation back and continues only so long as possession is retained.... (emphasis added)[8]

4. The issues in the instant adversary proceeding and those raised by the UCB motion for relief from stay are identical.

5. See note 2, *supra.*

6. *Trustee as lien creditor and as successor to certain creditors and purchasers*
   (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—
   (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;
   (2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists....
   11 U.S.C.A. § 544 (Supp.1985).

7. "Instrument" means a negotiable instrument (defined in § 47-3-104), or a security (defined in § 47-8-102) or any other writing which evidences a right to the payment of money and is not itself a security agreement or lease and is of a type which is in ordinary course of business transferred by delivery with any necessary endorsement or assignment[.]

8. The text of Ky.Rev.Stat. § 355.9-305 (1972), with the immaterial exception of the parenthetical, is identical.

This provision permits perfection by an original secured lender and makes secondary pledges possible where instruments are in the hands of a bailee. Possession of instruments by a third party coupled with the owner's lack of possession alerts prospective creditors that the ownership rights may be restricted or encumbered. *Appeal of Copeland*, 531 F.2d 1195 (3d Cir.1976).[9]

■ UCB contends BOC was a constructive bailee for the benefit of C.H. Butcher, Jr., and subsequent holders (Garrett and UCB) of debtor's note until January 1984, when BOC delivered the debenture and stock certificate to UCB. Conceding the assignment of a secured note likewise effects an assignment of the security interest,[10] nonetheless, the trustee argues BOC could not be a constructive bailee because it was unaware that it continued to possess the debenture and stock certificate. Though ordinarily created by delivery and acceptance pursuant to an agreement, a bailment may result from conduct, though neither foreseen nor contemplated. *Campbell v. State*, 2 Tenn. Crim.App. 39, 51, 450 S.W.2d 795, 800–801 (1969), *cert. denied*. A "constructive bailment" arises where a person having possession of a chattel holds it under such circumstances that an obligation to deliver it to another is imposed by law. 8 Am. Jur.2d *Bailments* § 19 (1980); *Black's Law Dictionary* 180 (4th ed.1968). Because C.H. Butcher, Jr. was entitled to receive the debenture and stock certificate when he acquired debtor's note, BOC became a constructive, or involuntary, bailee on Butcher's behalf through its unintentional retention of the debenture and stock certificate.[11]

■ Assuming arguendo BOC was likewise a bailee for the benefit of Garrett and UCB, UCB does not have a perfected security interest in the debenture and stock certificate vis-a-vis the trustee because BOC did not receive notice of UCB's interest until January 1984, some six months after commencement of debtor's case. A mutual mistake occurred with each assignment of debtor's note; each assignor and assignee apparently thought the collateral for the note was in a file delivered with the note. Acting on the mistaken belief they had possession of the debenture and stock certificate, no reason existed for either Garrett or UCB to notify BOC of their interest. Nonetheless, notification to a bailee of a secured party's interest is indispensable to perfection under Tenn.Code Ann. § 47–9–305 (1979).[12] *Hutchison v. C.I.T. Corp.*, 576 F.Supp. 1 (W.D.Ky.1982), *aff'd*, 726 F.2d 300 (6th Cir.1984). Since BOC did not have prepetition notice, actual or constructive, of the interest of either Garrett or UCB, their interests are unperfected.[13]

---

**9.** *Accord Ingersoll-Rand Fin. Corp. v. Nunley*, 671 F.2d 842 (4th Cir.1982) (third party's possession of mining equipment satisfied notice function underlying bailee with notice provision of U.C.C. § 9–305 because it afforded notice to prospective creditors that secured debtor did not enjoy unfettered use of equipment).

**10.** See *McAllester v. Jackson*, 5 B.R. 164, 166 (Bankr.M.D.Tenn.1980).

**11.** BOC had constructive notice through its own security vault records of its continued possession of the debenture and stock certificate.

**12.** The court has considered *Hale v. Kontaratos*, 10 B.R. 956 (Bankr.D.Me.1981) wherein Judge Cyr concluded that notification to the bailee means notification by the pledgor. Though cited by UCB, *Kontaratos* does not support its apparent position that no notice to BOC of UCB's security interest was necessary. Instead it is clear that notice to a bailee is necessary. The opinion recites in part:

> UCC § 9–305 makes the receipt of "notification" of the secured party's interest by a "bailee" the critical event that triggers an *ipso facto* possession in the secured party.

> . . . . . .

> "Notification" of the "bailee" *in se* affords no notice of the secured party's interest to creditors of the debtor. Why then does UCC § 9–305 require "notification" of the bailee? It can only have been because notification has long been viewed as essential to the *validity* of the nonpossessory pledge, a substitute for the actual possession which is infeasible in the circumstances. (footnotes omitted)

*Kontaratos*, 10 B.R. at 969–70.

**13.** *Cf.* Tenn.Code Ann. § 47–9–302(2) (1979): "If a secured party assigns a perfected security interest, no *filing* under this chapter is required in order to continue the perfected status of the

Hence, the UCB motion for relief from stay is denied.

This conclusion, however, does not necessarily entitle the Crabtree trustee to a turnover of the debenture and stock certificate. Indeed, considering the interest of James R. Martin, the intervening trustee for the C.H. Butcher, Jr. estate,[14] the court must address the trustee's contention that debtor's note is usurious.[15]

## IV

The stated rate of interest in debtor's note is "Chemical Bank Prime + 1%." According to the trustee, when the debtor's note was executed in July 1981 Chemical Bank's prime rate was twenty and one-half (20.5) percent, but the applicable maximum effective rate under Tennessee law was only eighteen (18) percent. 1979 Tenn.Pub. Acts ch. 203 (current version at Tenn.Code Ann. § 47–14–103 (1984)). Hence, the trustee asserts the debtor's note is usurious on its face and unenforceable. However, if the question of usury is a matter of Kentucky law the note is not usurious. Kentucky law permits parties to agree on any rate of interest where the obligation is in writing and the original, principal amount of indebtedness exceeds $15,000. Ky.Rev. Stat. § 360.010 (Supp.1984).[16]

Both Kentucky and Tennessee have significant contacts reasonably related to the loan transaction. The debtor, a Tennessee resident, apparently executed his note in, and mailed it to BOC from, Tennessee. Further, the loan funds were advanced in Tennessee, through a bank where BOC and the debtor both maintained accounts. But the lender is domiciled in Kentucky; interest payments were made to BOC, and the note is presumably payable, in Kentucky; the loan documents were accepted and agreed to in Kentucky; and the security for the loan was stored in BOC's security vault in Kentucky.

Although the note does not contain a choice of law provision, the intent of the parties is important.

The rule deducible from the Tennessee cases and the one deemed more in accord with principle is that neither the place of the execution nor the place of performance conclusively fixes the law governing a contract, but this is to be determined from the intention of the parties gathered from the instrument itself, taken in connection with all the circumstances surrounding the transaction. Of course, this intent, when ascertained, must have been entertained in good faith, and not for the purpose of evading the usury law, and, before the contract can be determined to be controlled by the law of any particular state, the intent must be reasonably referable to a place where some important element of the contract has its situs. In arriving at this intent the presumption is against the intent to violate the law, especially where several of the elements of the contract have their situs in that state where the contract is a valid one.

*Bowman v. Price,* 143 Tenn. 366, 380, 226 S.W. 210, 214 (1920).

Debtor's note is arguably usurious on its face, and thus unenforceable, if Tennessee law controls. Tenn.Code Ann. § 47–14–117(a) (1984).[17] On the other hand, the

---

security interest against creditors of and transferees from the original debtor." (emphasis added)

**14.** See note 2, *supra,* and section V of this memorandum.

**15.** The trustee also contends debtor's pledge of the MCP stock to BOC is voidable because it violated a transfer restriction conspicuously typed on the stock certificate. Assuming arguendo debtor's pledge to BOC violated the transfer provision, his pledge was not illegal. Further, the trustee is not a beneficiary of the

restrictive transfer provision and does not have standing to challenge debtor's pledge on this basis.

**16.** This statute was last amended in 1980, more than one year prior to BOC's loan to the debtor.

**17.** This statute, unmodified since its enactment in 1979 (two years previous to execution of debtor's note), recites:

*Usury or excessive charges—Contracts.—*(a) Any contract which on its face requires the payment of usury or excess loan charges,

note is unquestionably non-usurious under Kentucky law.

Tennessee, like many other states, has long recognized a choice of law principle unique in usury cases that parties are presumed to have chosen that law which will uphold the legality of their bargain. That law which will lend greatest validity to the transaction will be applied if it is otherwise logically relevant.

*Goodwin Bros. Leasing, Inc. v. H & B, Inc.*, 597 S.W.2d 303, 308 (Tenn.1980) (citations omitted).

There is no evidence of misleading, overreaching, or a bad faith attempt by BOC to circumvent usury laws. Indeed, the debtor was a sophisticated borrower. Presumably he and BOC intended to enter into a legitimate loan agreement, not one of questionable enforceability. Accordingly, the court finds that the debtor and BOC intended for Kentucky law to govern their rights relative to his note. Since it is logically relevant, the law of Kentucky controls the usury question, and the note is not usurious. Ky.Rev.Stat. § 360.010 (Supp.1984).

### V

On October 25, 1984, James R. Martin, intervenor, in his capacity as trustee for the estate of C.H. Butcher, Jr., filed a complaint asserting that Butcher's assignment to Garrett of debtor's note (and five others) was fraudulent.[18] A consent judgment, approved by the attorneys for both Garrett and the Crabtree trustee, entered on March 26, 1985, provides that Garrett's purchase of the debtor's note is void, subject to the rights if any of UCB, whose interest in the debenture and stock is unperfected. Because it took debtor's note with notice it was overdue, UCB is not a holder in due course. Tenn.Code Ann. § 47-3-302 (1979). Further, as a collection agent its rights are merely derivative.

Garrett, UCB's principal, has conceded that Butcher's transfer to it of debtor's note is void. Therefore, when the debtor's case was commenced Butcher was the holder of his note. Fortuitously, BOC held the instruments securing debtor's note as a constructive or involuntary bailee with notice of the interest of Butcher, BOC's immediate assignee. Hence, Butcher's interest in the debenture and stock was perfected when debtor's petition was filed. Ky.Rev. Stat. § 355.9–305 (1972).[19] Therefore, the Crabtree trustee is not entitled to a turnover of the debenture and stock certificate because these instruments are of inconsequential value or benefit to the estate. 11 U.S.C.A. § 542(a) (1979).

This Memorandum constitutes findings of fact and conclusions of law, Bankruptcy Rule 7052.

---

commitment fees or brokerage commissions shall not be enforceable; but the original lender or creditor may sue to recover the principal actually advanced plus lawful interest, loan charges, commitment fees and brokerage commissions.

**18.** See note 2, *supra.*

**19.** See note 8, *supra,* and accompanying text.