**In re ATLANTIC COMPUTER SYSTEMS INC., Debtor.**

**Bankruptcy No. 90–12117.**

United States Bankruptcy Court, S.D. New York.

Jan. 13, 1992.

Davis Polk & Wardwell by Philip C. Potter, Jr., Maryellen E. Abely, New York City, for debtor.

Weil Gotshal & Manges by Judy G.Z. Liu, New York City, for Creditors Committee.

Zalkin, Rodin & Goodman by Andrew Gottfried, Jay Teitelbaum, New York City, for IBM.

Hahn Loeser & Parks by Alan S. Kopit, Cleveland, Ohio, for CIT Group.

## MEMORANDUM DECISION ON SUMMARY JUDGMENT MOTION OF IBM FOR RELIEF FROM THE AUTOMATIC STAY

BURTON R. LIFLAND, Chief Judge.

### BACKGROUND

The Motion before the Court concerns numerous transactions involving computer and related equipment ("Equipment") manufactured by International Business Machines, Inc. ("IBM"), owned by Atlantic Computer Systems, Inc. ("Atlantic" or "Debtor"), and leased to various third parties. Each of the transactions followed a similar pattern with virtually identical documents. A credit worthy IBM customer (an "End User") entered into a standard form purchase agreement (the "Purchase Agreement") with IBM for the purchase of IBM Equipment. Pursuant to the Purchase Agreement, each End User granted IBM a purchase money security interest in the Equipment.[1] Under the Purchase Agreement, the purchase price was payable by the End User after the Equipment was installed and IBM's invoice was received. The Purchase Agreement could not be as-

signed without the prior written consent of IBM.

Prior to taking delivery of Equipment, each End User involved Atlantic Computer Systems, Inc. ("Atlantic" or the "Debtor") as a financial intermediary. The End User, Atlantic and IBM each executed an assignment agreement (the "Assignment"). Once accepted by IBM, the End User's rights and obligations under the Purchase Agreement were assigned to the Debtor. However, if the Debtor defaulted under the Purchase Agreement, the Assignment granted the End User the "option" to purchase the Equipment by assuming the Debtor's obligations under the Purchase Agreement. The Assignment also reserved IBM's purchase money security interest as follows:

> Until IBM receives full payment, the User's and [Debtor's] interest in the Machines shall be subject and subordinate to IBM's security interest.[2]

Thereafter, Atlantic and IBM executed a supplement agreement (the "Supplement") which identified the specific Equipment to be sold as well as, among other things, the purchase price, quantity, shipment date, payment date, and delivery and installation location (which was the End User's place of business). The Supplement also reserved IBM's purchase money security interest in the Equipment and further provided that only payment in full would satisfy the security interest.

Atlantic contemporaneously entered into a lease of the Equipment with each End User (the "Lease").[3] The Lease had a number of restrictions that applied to the End Users. Under the Lease, the End User cannot remove or relocate the Equipment without the Debtor's express consent; the Debtor retains access to the Equipment for inspection; and, the Debtor has a right

---

1. The Purchase Agreement provides that: "IBM reserves a purchase money security interest in each Machine. This interest will be satisfied by payment in full hereunder....".

2. Thus, IBM's retained security interest was noted in both the Purchase Agreement and the Assignment, and the End User was a party to both of these agreements.

3. Under this complex scenario, the End User transforms from contract purchaser of equipment to assignor of the contract and finally to lessee and bailee for Atlantic, the new owner of the equipment.

of approval over any agreement regarding Equipment maintenance. The End User is also obligated to keep the Equipment free and clear from all claims and encumbrances of any kind, other than those created by the Lessor.

In addition, Atlantic's so-called "flex" lease agreement, which was executed by a number of the End Users, gives the End User the flexibility to terminate the Lease upon six months' notice under certain conditions and/or to replace the Equipment after a specified period of time. If the End User exercises either of these "flex" options, the lessee would be obligated to "return the Equipment in good condition (normal wear and tear excepted)" to the Debtor.[4]

IBM clearly retained a security interest in the Equipment and Atlantic has not made any payments whatsoever to IBM. Consequently, by this motion, IBM moves for relief from the automatic stay or, alternatively, adequate protection.

The agreements indicate that IBM intended to perfect its security interest by filing financing statements. In fact, in many of these transactions, IBM did file financing statements, but the Debtor has alleged numerous defects in the filings. Rather than resolving the disputes between the parties over the adequacy of the financing statements, IBM has urged this Court to determine that it has a perfected security interest in the Equipment by virtue of § 9–305 of the Uniform Commercial Code ("UCC"). The relief from stay context in which this issue has been brought before the Court has been lost as the parties have focused on this fundamental question. Consequently, IBM did not make a concerted effort to prove that the Debtor does not have any equity in the Equipment as was its burden under 11 U.S.C. § 362 of the Bankruptcy Code. *See* 11 U.S.C. § 362(g)(1). Nor has it proved that the Equipment is declining in value for adequate protection purposes. Nevertheless,

the Court will proceed to resolve this § 9–305 dispute by giving the parties the declaratory judgment type relief that they request. *See* 28 U.S.C. §§ 2201–2202.

### DISCUSSION

**I. Introduction.**

According to IBM, this is a simple case. Section 9–305 sets forth a means of perfection where the collateral is in the possession of the secured party, his or her agent, or a bailee with notice. It states in relevant part:

> A security interest in ... goods ... may be perfected by the secured party's taking possession of the collateral. If such collateral other than goods covered by a negotiable document is held by a bailee, the secured party is deemed to have possession from the time the bailee receives notification of the secured party's interest. A security interest is perfected by possession from the time possession is taken without a relation back and continues only so long as possession is retained, unless otherwise specified in this Article....

N.Y.U.C.C. § 9–305 (Consol.1991).

IBM asserts that it is undisputed that a lease is a bailment under New York law and that it is clear that, due to the structure of the transaction and express terms of the agreements involved, the End Users had notice of IBM's retained security interest. IBM suggests that it is therefore plain that the End Users, as lessees of the Debtor, fit the broad definition of bailees with notice as required by § 9–305, and IBM has a perfected security interest.

Through a myriad of policy arguments, the Debtor[5] alternatively asserts that (1) the End Users are not bailees, (2) not all bailees can qualify as proper bailees under § 9–305 and (3) the bailees do not have the type of notice of IBM's security interest

---

**4.** The End User and lessee are one and the same in the transactions at issue.

**5.** Many of the Debtor's arguments are joined in and set forth in separate briefs by the Creditors'

Committee and James P. Hassett, an unsecured creditor and party in interest under 11 *U.S.C.* § 1109.

that is required for perfection under § 9–305.

In light of the unqualified language of § 9–305 and the Official Comment thereto, this Court is obliged to find that IBM does have a perfected security interest, because the End Users hold the Equipment as bailees with notice. Nevertheless, this finding is not made with ease, because, in this Court's opinion, the sort of expansive interpretation of bailee with notice (one that benefits a secured creditor *who is not* a party to the bailment arrangement) could, in many instances, conflict with the goals of the Uniform Commercial Code and undermine the public notice function of the filing system governing perfection of security interests. However, this is not such an instance, because here the End Users (the bailees) participated in and signed acknowledgements of IBM's security interest. In effect, these End Users have attorned to IBM.

II.  Lessees as Bailees under § 9–305.

█  Since Article 9 of the Uniform Commercial Code does not define "bailee", courts look to state law to determine the definition.[6] Bailment is generally defined as "a delivery of personal property for some particular purpose … upon a contract, express or implied, and that after such purpose has been fulfilled it shall be redelivered to the person who delivered it, or otherwise dealt with according to his directions, or kept until he reclaims it." *Rich v. Touche Ross & Co.*, 415 F.Supp. 95, 99 n. 2 (S.D.N.Y.1976). A lease clearly falls within this definition. As stated by the court in *Dubay v. Trans–America Insurance Co.*, 75 A.D.2d 312, 317, 429 N.Y.S.2d 449, 452 (2d Dept.1980), "a rental of personal property is a bailment for both parties, and generally is carried out by means of a contract termed a lease." *See also*, 5 N.Y.Jur. *Bailment* § 1. The parties have not cited any law or commentary that dispute these authorities, and it does appear well settled that under New York law a lease is a bailment.

█  Nevertheless, the Debtor asserts that while the End Users may technically be bailees, they are not appropriate or proper bailees for purposes of § 9–305. Official Comment 2 contains the only legislative restriction on § 9–305. It states:

"Possession may be by the secured party himself or by an agent on his behalf: it is of course clear, however, that the debtor or a person controlled by him cannot qualify as such an agent for the secured party …"

Applying this admonition in the bailee with notice context, the cases have consistently held that there can be no perfection by possession under § 9–305 where the bailee in possession is the debtor or a party closely aligned with the debtor. *See, e.g., Heinicke Instruments Co. v. Republic Corp.*, 543 F.2d 700, 702 (9th Cir.1976) (disqualifying corporation of which debtor formerly was president as satisfactory bailee); *In re North American Builders, Inc.*, 320 F.Supp. 1229 (D.Neb.1970) (president of debtor corporation disqualified as satisfactory bailee); *Rhode Island Hospital Trust National Bank v. Monzack (In re Lee)*, 28 B.R. 319 (Bankr.D.R.I.1983) (cousin of debtor's wife disqualified as satisfactory bailee); *McDonald v. National Bank of Stigler (In re Hill)*, 7 B.R. 433 (Bankr. W.D.Okla.1980) (father of debtor disqualified as satisfactory bailee). These cases represent situations in which prospective creditors would not have sufficient reason to inquire further regarding possible encumbrances. They follow the presumable concern of the drafters of § 9–305 that "if the debtor or 'an individual closely associated' with him holds the collateral, this would not sufficiently alert prospective creditors that the debtor's property is encumbered." *In re Rolain*, 823 F.2d 198, 199 (8th Cir. 1987) citing from *In re Copeland*, 531 F.2d 1195, 1204 (3d Cir.1976).

Such circumstances do not exist here. Typically, The End Users of Atlantic's equipment are large well known independent public corporations (i.e. Caterpillar Inc., The Mead Corp., First Financial Management Corp.). The Debtor cannot

---

**6.** The Agreements provide that New York law will govern the transactions.

reasonably contend that these large corporate entities which lease the Equipment are controlled by this Debtor or are so closely affiliated with it so as to create the impression that the Debtor controls them or retains possession of the Equipment.

Although it seems counter intuitive to find that IBM has constructive possession of the Equipment through Atlantic's bailee, there is no requirement in § 9–305 that the bailee in question be the secured party's bailee. Courts considering this anomaly have found that it is not necessary that the bailee have any relationship with the secured party. For example, in *In re Copeland*, 531 F.2d 1195, 1204 (3d Cir.1976) the Third Circuit found that neither the statute nor the policy underlying § 9–305 require "that possession of the collateral ... be by an individual under the sole dominion and control of the secured party." According to that court, it is sufficient that the bailee is "not controlled by the debtor." *Id.* Undoubtedly, the public notice function would be better served by a statutory requirement that the bailee be that of the secured party. However, § 9–305 does not contain such a restriction.

In fact, interpreting the unqualified language of § 9–305, courts have found a broad range of parties to be proper bailees. A "bailee" may be an apparent lessee (*Ingersoll–Rand Financial Corp. v. Nunley*, 671 F.2d 842, 845 (4th Cir.1982)); the Debtor's attorney (*In re Rolain*, 823 F.2d 198 (8th Cir.1987)); the Debtor's consignee (*In re Miller*, 545 F.2d 916, 919 (5th Cir.1977)).

Nevertheless, recognizing infirmities in the bailee with notice exception of § 9–305, courts have held that another restriction to the bailee qualification should be that the bailee may not have an "interest" in the collateral. The nature of this forbidden interest is unclear. In *In re Coral Petroleum, Inc.*, 50 B.R. 830 (Bankr.S.D.Tex.1985), the court refused to find a perfected security interest where the bailee himself was a holder of a security interest in the collateral. The court held that this interest prevented the holder from qualifying as a proper bailee. The Court found that a perfected security interest could not be cre-

ated under § 9–305 by simply informing the holder of collateral of the security interest unless there was an acceptance on the part of the potential bailee to be a party to the bailment. It reasoned as follows:

> By requiring the bailee to have no interest in the instrument in its possession, the danger of the bailee trying to pass the instrument off as his own is averted. The commercial world can rely upon an independent agent to represent accurately that the liens on the instrument do, in fact, exist. To require an interested party to inform the world of all other lien claimants, without an express agreement, would be a duty which the case law does not impose for the reason that the interested lienholder, who is also a bailee, would communicate conflicting signals to the commercial world for he would exercise unilateral control over the instrument while supposedly holding it for the benefit of another secured party. These are inconsistent positions that would cause chaos in commercial transactions.

*Id.* at 839–840.

This Court shares the *Coral* court's concerns about the potential for mischief that can arise from a literal application of § 9–305. However, while *Coral's* reasoning is logical, courts must be very careful in creating limitations on statutes that appear plain. Official Comment 2 to § 9–305 specifically states that:

> [w]here the collateral (other than goods covered by a negotiable document) is held by a bailee, the time of perfection of the security interest, under the second sentence of [§ 9–305], is when the bailee receives notification of the secured party's interest: this rule rejects the common law doctrine that it is necessary for the bailee to attorn to the secured party or acknowledge that he now holds on his behalf.

Thus, while *Coral's* result is arguably consistent with the purpose of § 9–305, it defies the plain language of the statute and

the Official Comment thereto.[7]

If there is room for interpretation under § 9–305 to require that the bailee not have a *Coral* type "interest", that impermissible interest can only be an interest which would deter the bailee from fulfilling his or her notice duty. In this particular case, no such interest exists. While the End Users do have a leasehold interest in the Equipment, it does not threaten the lessee's notice function. In fact, the End Users may not enter into any security agreement concerning the equipment without the Debtor's consent. Lease, par. 6, par. 16. In addition, the End User's leasehold interest is expressly subordinated to the security interest of IBM. Moreover, an additional security interest covering the collateral might jeopardize the lessees rights under the lease agreement. Therefore, the lessees have an interest in disclosing IBM's security interest in order to deter additional liens on the property. In short, the End Users have an interest in assuring that nothing disrupts the relationship initially established between themselves, the Debtor and IBM.

Thus, *Coral* is distinguishable from the present proceeding in that the bailees here initiated the bailment and security interest structure of the lease arrangements, and the bailees do not have a security interest that conflicts with the interest of the creditor seeking perfection under § 9–305.

This analysis is consistent with the majority of case law considering agents and bailees under § 9–305. In *In re ICS Cybernetics, Inc.*, 123 B.R. 467 (Bankr. N.D.N.Y.1989), *aff'd*, 123 B.R. 480 (N.D.N.Y.1990), the court found a security interest perfected under § 9–305 under very similar circumstances. The court's analysis overwhelmingly focused upon collateral issues, possession of valuable lease documents (collateral) which formed the basis of a perfected security interest in a stream of rental payments. The court also noted, without discussing any of the policy

implications of its holding, that a security interest was perfected under § 9–305 where computer equipment (the collateral) was held by a lessee (bailee) who had notice of the secured party's security interest. *Id.* at 476.

In another lease type transaction, In *Ingersoll–Rand v. Nunley*, 671 F.2d 842 (4th Cir.1982), the Fourth Circuit determined that a party in exclusive possession of certain mining equipment who was paying the manufacturer/secured creditor on behalf of the purchaser/Debtor for the use of equipment was a bailee under § 9–305. Since this bailee had notice of the creditor's security interest, the security interest was perfected.

### A. *"Possession" of the Equipment.*

The secured party has constructive possession from the time a bailee (the party in actual possession) receives notice. *See*, Official Comment 2, *supra*. The Debtor contends that while, generally speaking, a lease may be a bailment, the Atlantic–End User Leases grant the Debtor so much control over the Equipment that the End Users never acquire actual possession of the Equipment and, therefore, the secured party cannot be deemed to have possession. Although "possession" is not an explicit requirement for perfection and the term is not defined under the Code, "unless a putative secured party's possession of pledged instruments rises to the level of 'actual and exclusive possession' as required at common law, his security interest has not been perfected." *Clarkson Co., Ltd. v. Shaheen*, 533 F.Supp. 905, 918 (S.D.N.Y.1982). The common law has developed two requirements for possession. First, "the pledgor [must] surrender his dominion over the property, and ... [second] any semblance of ostensible ownership in the pledgor [must] be negatived." 4B *Collier on Bankruptcy*, par 70.86 at 982 (14th ed. 1978). As stated by the court in *In re*

---

7. *See also*, G. Gilmore, *Security Interests in Personal Property*, Ch. 1 (1965), § 14.2 at 440–41: "... the collateral may be in the possession of a third person who holds merely as a bailee or who may himself claim a pledge or other interest ... [S]ome of the older cases suggest there must also be an acknowledgement or attornment by the third person to the pledgee, but modern authority holds that notification is all that is required."

*Kontaratos,* 10 B.R. 956 (Bankr.D.Me. 1981), "[i]nsofar as the 'possession' of a third person fairly reflects absence of control in the debtor over encumbered collateral, the UCC § 9–305 public notice function is well served, but in order faithfully to apply UCC § 9–305 in service of its public notice function 'possession' must be construed to mean 'control.' "

The Debtor makes two arguments to demonstrate that the End Users never acquired the requisite control over the collateral. The first is that several provisions of the Lease allow the Debtor to exercise an element of control over the equipment. For instance, the End Users cannot remove or relocate the Equipment without the Debtor's express consent, *See,* Hanley Aff., Exch. 1, par. 6; the Debtor retains access to the equipment for inspections, *See id.,* par. 7; and the Debtor has an approval right over any agreement regarding the equipment's maintenance, *See, id.,* par. 9.

This argument is not persuasive. Paragraph 21 of the Lease specifically states:

QUIET ENJOYMENT. Notwithstanding any other provisions hereof, Lessor covenants and warrants that if and for so long as Lessee performs all of its obligations hereunder, Lessee shall have the quiet use and possession of the Equipment, without interference from any person or entity claiming by, through or under Lessor.

In light of this provision, it would be unreasonable to find that the End Users do not have sufficient possession of the equipment. The degree of control retained by Atlantic simply helps to protect the Debtor's reversionary interest in the collateral. In any bailment, while the owner is required to relinquish unfettered control over the collateral, an ownership interest necessarily remains. To protect its reversionary interest, an owner must be expected to oversee the maintenance and care of its property. Therefore, retention of a degree

of control in the Leases cannot reasonably be interpreted to destroy an otherwise valid security interest under § 9–305.[8]

Courts which have denied perfection under § 9–305 as a result of the debtor's control over the collateral have done so only where the debtor retained unfettered control over the collateral. For example, in *In re Singer Products Co.,* 102 B.R. 912, 926 (Bankr.E.D.N.Y.1989), the court found that a secured party had failed to perfect its security interest in funds deposited in an unrestricted account with an overseas bailee, because the Debtor had complete access to the funds and in fact received in excess of $300,000 from the account. Similarly, in *In re Bialk,* 16 U.C.C.Rep.Serv. 519 (W.D.Mich.1974), the Court held that a creditor who had possession of keys to a safe deposit box containing the collateral had not perfected its security interest by possession under § 9–305, because the signature cards continued to give the debtor unrestricted access to and control over the safe deposit box holding the collateral. No analogous forms of control were retained by the Debtor in this case.

Alternatively, the Debtor argues that the End Users do not have sufficient control over the Equipment, because at the end of the Lease, the Equipment will revert back into the Debtor's possession. However, § 9–305 does not suggest that "possession" must be permanent. In fact, the right to control goods upon the completion of a bailment, as well as the other indicia of control retained by the Debtor, are standard procedures in bailments. To claim that such provisions deprive the End User of possession of the Equipment during the lease is to disregard the nature of bailments and to eliminate the "bailee" provision from UCC § 9–305. Thus, the End Users have adequate control over the Equipment.

---

**8.** *See In re Miller,* 545 F.2d 916 (5th Cir.1977) (security interest in art work owned by the Debtor and held for sale on consignment by an art gallery was perfected under § 9–305 despite the fact that the Debtor had the right to refuse a sale price of any of the works of art. The Court noted that "[t]he objects were effectively placed beyond the reach of Miller [the debtor] ... Miller's retention of control over the prices of sale is quite reasonable as a right to avoid a sacrificial sale." *Id.* at 918.)

### B. Bailees Notice Function.

In an additional policy argument, the Debtor suggests that the notice function of § 9–305 will not be met by the End Users, because the End Users possession of the Equipment does not provide ipso facto notice to third parties of the security interest. Such an argument is an overly restrictive view of the notice function of § 9–305.

The rationale underlying § 9–305 is that the Debtor's lack of possession, coupled with possession by a bailee, will provide third parties who seek to deal with the *Debtor* with notice that the Debtor may not have the unfettered use of the collateral, that the Debtor's interest in the collateral may be encumbered and that further inquiry is warranted to learn the respective rights and interest of the Debtor, the End Users or any other party in the Equipment. *See, Ingersoll–Rand v. Nunley*, 671 F.2d at 845; *In re Copeland*, 531 F.2d at 1204.

Therefore, it is clear that the *theory* behind § 9–305 is served by the End Users' possession of the equipment. Prospective third party creditors, seeing that the Debtor lacks possession of the equipment, will be put on notice that the Debtor does not have unfettered control over the equipment. In theory, this will lead them to make inquiries concerning the equipment which in turn will bring to light IBM's security interest. In this case, such interest could be discovered either through review of the Leases or by inquiry of the End Users.

While the possibility for mischief may not have been great in this case, this Court has serious doubts as to whether the theory on which the bailee with notice exception to filing is based is sufficiently reliable. As discussed in a leading treatise:

The bailee-with-notice transaction does not afford the same reliability of notice [as actual possession of the collateral by the secured party]. *The act of notifying the bailee of the secured party's interest affords no notice to third persons. The bailees receipt of notification serves only one purpose, namely, that the bailee will inform investigating third persons that the secured party*

*has an interest in the collateral. This notification procedure is rather a slender reed upon which to predicate notice to third persons, for there is always the risk that the bailee will ignore the notification altogether, release the collateral to the debtor, or simply fail to furnish appropriate notice to third parties who inquire about the debtor's property....*

The bailee-with-notice technique is defensible as a means of apprising the debtor's potential creditors of the secured party's interest only to the extent that the debtor is deprived of possession and that the bailee is likely to make appropriate disclosures of the secured party's interest.

P. Coogan, W. Hogan, *Secured Transactions Under the Uniform Commercial Code*, 14–49––14–51 (emphasis added). While this Court concurs in these comments, whether the bailee with notice method of perfection is defensible or not, it is embodied in the statute. These commentators present reasons for the legislatures to reconsider § 9–305, not for this Court to rewrite or ignore it. "When a court refuses to follow the clear and unambiguous terms of a statute and instead chooses to impose its own views and modification, it is in effect legislating." *In re Pan Am Corp.*, 124 B.R. 960, 966 (Bankr.S.D.N.Y.), *aff'd*, 929 F.2d 109 (2d Cir.), *cert. denied*, ––– U.S. –––, 111 S.Ct. 2248, 114 L.Ed.2d 488 (1991).

Thus, for all the foregoing reasons, this Court finds that the End Users are "bailees" in accordance with § 9–305 of the Uniform Commercial Code.

### III. Notice of IBM's Security Interest.

It is undisputed that the End Users had notice of IBM's security interests at the time of entering into these transactions. Nevertheless, Atlantic contends that since it, not the End Users, makes payments to IBM, such notice is insufficient because the End Users will not have current notice of the status or existence of the security interests over time. As a result, the End Users will be unable to accurately and effectively advise an inquiring third

party as to whether the security interest remains extant. Not surprisingly, no authority brought to the Court's attention provides any support for this argument. It is an unreasonable interpretation of the "notice" required.

The exceptions to filing in § 9–305 exist because the situations described serve a similar function to a financing statement. Just like a financing statement, they put prospective third party creditors on notice that the debtor's ownership of the collateral may be encumbered. A financing statement does not necessarily reflect the current state of affairs. A financing statement may be filed before any security agreement is ever entered into. It may also remain on record long after the security interest is reduced or extinguished. It is the responsibility of the third party, once informed of the possible security interest, to conduct further research and inquiry to determine the extent of the encumbrance. Thus, it is unnecessary for the End Users to know the exact outstanding balance on the debt secured by the collateral.

Therefore, this Court finds that the End Users were adequately informed of IBM's security interest so that they should be considered "bailees with notice", able to put prospective third party creditors on notice of IBM's possibly outstanding security interests.

## CONCLUSION

In closing, it should be emphasized that as a matter of policy this Court is not convinced that possession of collateral by a lessee under all circumstances is likely to provide reasonable notice to future creditors.[9] In the unqualified form set forth in § 9–305, the bailee with notice exception is a substantial intrusion upon the normal filing system of the Uniform Commercial Code. The "bailee with notice" method of perfection would be easier to accept if it was limited to situations in which the collateral was held by the secured party's

bailee or an escrow agent. *See Hassett v. Blue Cross and Blue Shield of Greater New York (In re OPM)*, 46 B.R. 661, 670 (Bankr.S.D.N.Y.1985). This exception to the perfection by filing requirement has potential to create substantial confusion in commercial lending.

Nonetheless, in this case, having found that the End Users are bailees under New York law, that they have adequate possession of the Equipment and that they have unequivocal notice of IBM's security interest in that Equipment, this Court finds IBM to have constructive possession of the Equipment and a perfected security interest under § 9–305 of the Uniform Commercial Code.

Submit an order consistent with this opinion.

---

**9.** *See Hassett v. Revlon, Inc. (O.P.M. Leasing Services, Inc.)*, 23 B.R. 104, 117 (Bankr.S.D.N.Y. 1982) (while this Court ruled that no security interest was intended or created in the transaction at issue, it also noted that assuming a

security interest was established, that security interest could not be perfected through actual possession where the secured party itself held the "collateral" as a lessee.)