**In re Frederick A. BRAGIEL, Debtor.**

**Phillip D. LEVEY, not individually, but as Trustee of the Bankruptcy Estate of Frederick A. Bragiel, Plaintiff,**

**v.**

**BURKE, WILSON & McILVAINE, an Illinois partnership; Burke, Griffin, Chomicz & Wienke, P.C., an Illinois corporation; and Boulevard Bank National Association, Defendants.**

**Bankruptcy No. 91 B 04211.
Adv. No. 91 A 01117.**

United States Bankruptcy Court,
N.D. Illinois, E.D.

Feb. 19, 1993.

David E. Cohen, Cohen & Krol, Chicago, IL, for plaintiff Phillip Levey.

Joan M. Fencik, Wildman, Harrold, Allen & Dixon, Chicago, IL, for Boulevard Bank Nat. Ass'n.

Edward J. Lesniak, Burke, Warren & Mackay, P.C., Chicago, IL, for Burke, Griffin, Chomicz & Weinke.

Malcom M. Gaynor, Martin Salzman, Eric S. Rein, Schwartz, Cooper, Kolb & Gaynor, Chicago, IL, for 1st Nat. Bank of Cicero.

Thomas J. Magill, Wilson & McIlvaine, Chicago, IL, for Wilson & McIlvaine.

Neil P. Gantz, Chicago, IL, for debtor Frederick A. Bragiel.

Phillip D. Levey, Chicago, IL, trustee.

Paul Hoffman, Keck, Mahin & Cate, Chicago, IL, for Bank One Evanston, N.A. (formerly known as First Illinois Bank of Evanston, N.A.).

## MEMORANDUM OPINION

RONALD S. BARLIANT, Bankruptcy Judge.

This proceeding involves a debtor's pledge of his shares of stock in a law firm, an Illinois professional corporation. The Trustee has moved for summary judgment on its count to avoid an alleged security interest claimed in the shares. The determinative issues are whether Article 8 or Article 9 of the Illinois Commercial Code governs and whether the alleged secured creditor perfected its security interest under the applicable Article. Because this Court holds that Article 9 governs the pledge of shares in an Illinois professional corporation and the secured creditor perfected by providing notice of its security interest to the bailee holding the shares, Trustee's Motion for Summary Judgment has been denied.

## I.  UNCONTESTED FACTS

The Debtor, Frederick A. Bragiel, borrowed money from Boulevard Bank National Association (the "Bank") to enable the Debtor to purchase common stock in the Chicago law firm with which he practiced, Burke, Griffin, Chomicz & Wienke, an Illinois professional corporation (the "Firm"). As security for the loan, the Debtor pledged his shares in the Firm to the Bank; however, the Firm retained possession of the Debtor's shares. As evidence of this transaction, the Debtor, the Bank and the Firm signed an agreement, the effect of which is disputed by the parties, that provides in pertinent part:

This will memorialize the understanding of Boulevard Bank National Association (BBNA), Frederick A. Bragiel ("Bragiel") and Burke, Griffin, Chomicz & Wienke, P.C. (BGC & W) concerning the loan being extended by BBNA to Bragiel to enable Bragiel to finance his purchase of 89.94 shares of BGC & W common stock.... Bragiel is pledging the shares to BBNA to secure the loan.

To induce BBNA to make the loan, BGC & W agrees that in the event Bragiel defaults under his loan obligation, on demand by BBNA, BGC & W will purchase the shares pledged to BBNA.... This would be BGC & W's sole obligation to BBNA, and in no event would BBNA have any claim against BGC & W for any other sums owed by Bragiel to BBNA regardless of whether BGC & W is otherwise indebted to Bragiel. In return, BBNA agrees that it will not sell said shares to any party other than BGC & W in the event of default by Bragiel.

## II. ARTICLE 8 VS. ARTICLE 9

■ The Trustee maintains that perfection of the Bank's security interest in the Debtor's shares is governed by Article 8 of the Illinois Commercial Code. The Bank counters that Article 8 only governs shares of an entity that are "commonly dealt in on securities exchanges or markets." 810 ILCS 5/8–102 (1992) (formerly Ill.Rev.Stat., ch. 26, ¶¶ 8–102(a)(ii), 8–102(b)(ii)). The shares of the Firm, the Bank argues, are not traded at all. The Bank's argument ignores the literal language of § 8–102 that only requires that shares be "of a type" commonly dealt in on securities exchanges. The inquiry, therefore, is not whether the shares are in fact traded, but whether the shares are "of a type" commonly traded. It is for this reason that non-traded shares in a close corporation generally are governed by Article 8. *See* Official Comment 2 to § 8–102 ("[i]nterests such as the stock of closely-held corporations, although they are not actually traded upon securities exchanges, are intended to be included within the definitions of both certificated and uncertificated securities....").

■ This conclusion, however, does not carry the day for the Trustee; it remains to be determined whether the shares in an Illinois professional corporation are "of a type" commonly traded. One of the explanations given for treating shares in a close corporation under Article 8 is that it would be anomalous to change perfection rules based on the number of shareholders. Hawkland, Alderman & Schneider, *UCC Series* § 8–102:02 (Art. 8) (1986). Shares in an Illinois professional corporation, however, are different in a way more fundamental than the number of shareholders. The Illinois Professional Service Corporation Act provides that "[n]o corporation organized under this Act may issue any of its capital stock to anyone other than an individual who is duly licensed or otherwise legally authorized to render the same specific professional services or related professional services as those for which the corporation was organized." 805 ILCS 10/11 (1992) (formerly Ill.Rev.Stat.Ann., ch. 32, ¶ 415–11 (Supp.1992)). For this reason, re-gardless of the number of shareholders, shares in an Illinois professional corporation are not "of a type" commonly traded. *See Gulf Mortgage and Realty Investments v. Alten, et al.,* 282 Pa.Super. 230, 234, 422 A.2d 1090, 1092 (1980) (Article 8 does not govern shares in a Pennsylvania professional corporation). Therefore, Article 9, not Article 8, governs perfection of the Bank's security interest.

## III. ARTICLE 9 PERFECTION

■ The Bank maintains that it perfected its security interest in the shares pursuant to § 9–305:

A security interest in ... goods, instruments (other than certificated securities), money, negotiable documents, or chattel paper may be perfected by the secured party's taking possession of the collateral. If such collateral other than goods covered by a negotiable document is held by a bailee, the secured party is deemed to have possession from the time the bailee receives notification of the secured party's interest.... 810 ILCS 5/9–305 (1992) (formerly Ill.Rev.Stat., ch. 26, ¶ 9–305).

The Bank claims that the Firm's uninterrupted possession of the Debtor's shares resulted in the perfection of the Bank's security interest in the shares under § 9–305. In response, the Trustee argues that the Firm is not a bailee for the Bank; even if the Firm were a bailee, no perfection could occur because the Firm is closely aligned with the Debtor.

In support of the argument that no bailment exists, the Trustee first states that Illinois bailment law requires the delivery of "goods" and the definition of "goods" in § 9–105(f) excludes stock. This argument is refuted by the text of § 9–305. The reference in the second sentence of § 9–305 to "such collateral" relates to more than "goods". "Instruments" also are covered under § 9–305 and the Trustee does not argue that the Debtor's shares are not instruments.

■ The Trustee, however, argues that no bailment exists in this case because: (1) nothing was delivered to the Firm, (2) the

Bank did not require the Firm to maintain possession of the shares or turnover the shares to the Bank upon default by the Debtor and (3) the Bank did not limit the Debtor's access to the shares. These arguments misconstrue the nature of a bailment under § 9–305. "The bailee presumably already has possession of the collateral by virtue of some pre-existing relationship with the debtor, and his receiving notification of the secured party's interest merely operates to transfer possession—albeit constructively—to the secured party." J. Worley, *Possessory Security Interests* § 14.04[2][a][ii] at 14–48, *quoted in Matter of Van Kylen,* 98 B.R. 455, 467 (Bankr. W.D.Wis.1989). Here, the Firm had a pre-existing relationship with the Debtor and continued to hold the Debtor's shares on his behalf. *See generally American Ambassador v. City of Chicago,* 205 Ill.App.3d 879, 150 Ill.Dec. 755, 758, 563 N.E.2d 882, 885 (1 Dist.1990) (constructive bailment created when one person lawfully acquires property of another and is deemed to hold such property on behalf of the owner). The Bank then satisfied the notice requirement under § 9–305 when the Firm executed (and prepared) the tri-party agreement acknowledging the pledge of shares from the Debtor to the Bank. Therefore, the Firm acted as the bailee of the Debtor's shares with notice of the Bank's security interest.

 Trustee's final argument is that the Firm is not the type of bailee that would put a prospective creditor on adequate notice that the Debtor pledged the shares to the Bank. *Atlantic Computer Systems, Inc.,* 135 B.R. 463, 466 (Bankr. S.D.N.Y.1992); *In re Rolain,* 823 F.2d 198, 199 (8th Cir.1987). Both *Atlantic Computer* and *Rolain,* however, espouse a more precise exception to the "bailee with notice" rule. If the bailee is *controlled by* the debtor, third parties are not placed on sufficient inquiry notice that the debtor's control over its property is restricted. *Atlantic Computer,* 135 B.R. at 470; *Rolain,* 823 F.2d at 199–200. Notwithstanding the Debtor's status at the Firm as a "partner", there is no suggestion that the Debtor controlled the Firm or even that the Debtor

appeared to control the Firm. A bailee may owe duties to both the debtor and the secured party and yet be a bailee under § 9–305. *Rolain,* 823 F.2d at 200 (debtor's attorney deemed bailee under § 9–305); *but see In re Milam,* 4 B.R. 621, 622 (Bankr.M.D.Ga.1980) (court concluded that issuing corporation could not serve as bailee of both debtor and secured party). Therefore, the Firm's possession of the shares was adequate to place third parties on inquiry notice that the Debtor did not have unfettered control over the shares.

## IV. CONCLUSION

For the foregoing reasons, the Trustee's Motion for Summary Judgment on Count III of Complaint has been denied.